IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
CINCINNATI DIVISION

MARLOW JORDAHL            :      CASE NO. C-1-01-862
6675 Waters Edge
Loveland, OH 45140      :

          Plaintiff      :    **RESPONSES TO DEFENDANT**
                                       **WATLOW ELECTRIC**
    vs.                   :    **MANUFACTURING COMPANY'S**
                                       **FIRST REQUEST FOR ADMISSIONS**
WATLOW ELECTRIC MANUFACTURING :    **DIRECTED TO PLAINTIFF MARLOW**
COMPANY                         **JORDAHL**
12001 Lackland Road       :
St. Louis, Missouri 63146

                     :

          Defendant

Plaintiff, Marlow Jordahl submits the following responses to Defendant's First Request for Admissions.

REQUESTS FOR ADMISSION

1.    Admit that, prior to the filing of this lawsuit, you were aware that the Internal Revenue Service had determined at some point that, for federal tax purposes, sales representatives engaged by Watlow were independent contractors and not employees.

    **ANSWER:**    Objection. This request for admission as framed is vague and misleading. Without waiving this objection, plaintiff denies the request.



2.      Admit that, between December, 1986 and May, 1997, Watlow provided
information to you and solicited information from you regarding the
characterization of Watlow's sales representatives as independent contractors.

**ANSWER:** Objection. This request as framed is vague and misleading.
Without waiving this objection, it is admitted that this issue was the subject of
various communications over time.

3.      Admit that each of the following documents, exhibited with this request are
genuine.

A. Agreement, dated April 16, 1974, signed by you and Louis Desloge, Jr.,
acting for Watlow (Exhibit A hereto);

B. Agreement, dated April 1, 1975, signed by you and Louis Desloge, Jr., acting
for Watlow (Exhibit B hereto);

C. Sales Representation Agreement, dated December 1, 1976, signed by you
(Exhibit C hereto);

D. Sales Representation Agreement, dated January 1, 1979, signed by you and
Louis Desloge, Jr., acting for Watlow (Exhibit D hereto);

E. Sales Representation Agreement, dated November 1, 1983, signed by you
and Brent S. Barton, acting for Watlow (Exhibit E hereto);

F. Sales Representation Agreement, dated March 1, 1989, signed by you and
David Jacoby, acting for Watlow (Exhibit F hereto);

G. Sales Representation Agreement, dated January 1, 1990, signed by you and
David Jacoby, acting for Watlow (Exhibit G hereto);

H. Sales Representation Agreement, dated February 1, 1991, signed by you and David Jacoby, acting for Watlow (Exhibit H hereto);

I. Sales Representation Agreement, dated January 1, 1992, signed by you and David Jacoby, acting for Watlow (Exhibit I hereto);

J. Sales Representation Agreement, dated July 1, 1992, signed by you (Exhibit J hereto);

K. Sales Representation Agreement, dated January 1, 1993, signed by you and Tim Crnko, acting for Watlow (Exhibit L hereto);

L. Sales Representation Agreement, dated March 1, 1993, signed by you and Tim Crnko, acting for Watlow (Exhibit L hereto);

M. Sales Representation Agreement, dated May 1, 1993, signed by you and Tim Crnko, acting for Watlow (Exhibit M hereto);

N. Sales Representation Agreement, dated December 1, 1994, signed by you and Tim Crnko, acting for Watlow (Exhibit O hereto);

O. Sales Representation Agreement, dated January 1, 1996, signed by you and Mike Butts, acting for Watlow (Exhibit O hereto);

P. Employment Agreement, dated June 1, 1997, signed by you and William F. Ott, Jr., acting for Watlow (Exhibit P hereto);

Q. Employment Agreement, dated July 19, 2001, signed by you and William F. Ott, Jr., acting for Watlow (Exhibit Q hereto); and

R. Consulting Agreement, dated September 15, 1998, by and between you and Troy Seppelt, Paul Sullivan, Paul Taylor and Glenn Vinson (Exhibit R hereto).

**ANSWER:** Objection. The term "genuine" as used in this request for admission is vague and undefined. Without waiving this objection, plaintiff admits that the documents attached to the request are authentic within the meaning of F.R.E. 901 and generally are what they purport to be.


Edward S. Dorsey            (#0037630)
William Liss               (#0068252)
LINDHORST & DREIDAME
Attorneys for Defendant
312 Walnut Street, Suite 2300
Cincinnati, Ohio 45202-4091
(513) 421-6630

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was served by ordinary U.S. Mail, postage prepaid, upon Harry J. Finke IV, Esq., Graydon, Head & Richey, 1900 Fifth Third Center, 511 Walnut Street, Cincinnati, Ohio 45202-3157; and by facsimile and ordinary U.S. Mail, postage prepaid, to Mary Ann L. Wymore, Esq. and Wendy M. Schumacher, Esq., Greensfelder, Hemker & Gale, P.C., 2000 Equitable Building, 10 South Broadway, St. Louis, Missouri 63102, this 28th day of February, 2003.

Edward S. Dorsey
Attorney at Law

334085

JORDAHL

# ₩ATLOW ELECTRIC MANUFACTURING COMPANY

TELEPHONE: 314-878-4600 • • • • • TELEX: 44-2428

This AGREEMENT, made at St. Louis, Missouri, this sixteenth day of April 1974 by and between WATLOW ELECTRIC MANUFACTURING COMPANY of St. Louis, Missouri, hereinafter called the COMPANY, and MARLOW JORDAHL AND ASSOCIATES, Dayton, Ohio, hereinafter termed the REPRESENTATIVE.

In consideration of the execution of this AGREEMENT on the part of both parties hereto, and of the mutual promises and covenants herein contained, made each to the other, COMPANY and REPRESENTATIVE hereby agree that REPRESENTATIVE shall exert his best efforts to promote the sale of the COMPANY'S products, in the territory hereinafter defined, consummating such sales and executing such contracts in the COMPANY'S behalf as shall be expressly authorized in writing by the COMPANY.

## TERRITORY:

All the counties in Ohio south of and including the counties of Van Wert, Allen and Hardin. West of and including the counties of Logan, Champaign, Clark, Greene, Clinton, Highland and Adams. North of and including the counties of Brown, Clermont and Hamilton.

All the counties in Indiana south of and including the following counties: Allen, Wells, Grant, Howard, Carroll, Tippecanoe and Warren.

All counties in Kentucky EXCEPT those counties west of and including the counties of Union, Crittenden, Caldwell and Trigg and the county of Boyd in the northeastern section of the state.

## QUOTATION:

REPRESENTATIVE agrees to quote only those prices and terms as are established by the COMPANY. Quotations for heating units not listed by the COMPANY, or its competitors, will be made by the COMPANY.

## COMMISSION:

REPRESENTATIVE shall receive as compensation for his services a commission on the total selling price of all sales of the COMPANY'S products in his territory as follows: All St. Louis products will return 5% with the exception of product codes (24), (50) and (92) which will return 2% on orders less than $10,000 each, 1-1/2% on orders from $10,000 to $100,000 and 1% on orders greater than $100,000 each. Orders for Hannibal products will return 5% for orders less than $1,000, 3-1/2% for orders greater than $1,000 and 2% on high volume appliance heaters such as table top broilers, coffee makers, irons, dishwashers, domestic water heaters, baseboard element applications and frypan elements to name a few.

Payments will be made on the 20th of the month following shipments to customers.

## EXPENSES:

COMPANY agrees to reimburse REPRESENTATIVE all travel and other expenses reasonably and necessarily incurred in promoting the sale of the COMPANY'S products and in the performance of his duties as set forth in this contract.

**EXHIBIT**

A

ALL-STATE® INTERNATIONAL

# ATLOW ELECTRIC MANUFACTURING COMPANY

TELEPHONE: 314-878-4600 • • • • • TELEX: 44-2428



-2-

## ENGINEERING AND SERVICING:

REPRESENTATIVE agrees to engineer and service applications of COMPANY products in the territory described herein.

## AUTHORITY:

REPRESENTATIVE has no authority to receipt for money, nor to bind the COMPANY to any contracts, agreements, or undertakings, verbal or written, or any amendments or alterations of any of the foregoing, except those written contracts or written amendments thereof which have been submitted to and approved by the COMPANY in St. Louis. It is further expressly understood and agreed that at all times herein, REPRESENTATIVE shall occupy the position of an independent contractor with respect to the COMPANY in the conduct of his affairs and in any actions which he may undertake in the discharge of his duties under this contract.

## COLLECTIONS:

REPRESENTATIVE agrees to protect the COMPANY to the best of his ability against loss, and will cooperate in the collection of credit information, delinquent accounts, etc., in any manner as requested by the COMPANY.

## TRADE SECRETS AND CONFIDENTIAL INFORMATION:

REPRESENTATIVE further acknowledges, recognizes and understands that the COMPANY is possessed of trade secrets and certain confidential information in connection with its business, and hereby agrees not to disclose directly or indirectly to any person, organization or company, or to use any of said COMPANY'S trade secrets, experimental data, inventions, discoveries, improvements, designs, methods, systems developments, "know-how", ideas, suggestions, devices, processes, and the like, or any other private or confidential information of the COMPANY which shall be acquired by, disclosed to, or come to his attention or knowledge as a REPRESENTATIVE of said COMPANY, except under the express written direction of said COMPANY. Upon the termination of this AGREEMENT by either party hereto, REPRESENTATIVE agrees that he will not take with him, retain, or thereafter use, in any way, any designs, drawings, prints, or confidential data, memoranda or information, or copies thereof, without the written consent of said COMPANY.

## NON-COMPETE COVENANT:

REPRESENTATIVE further agrees that for a period of one (1) year after termination of this AGREEMENT, he will not, directly or indirectly, engage in any business in competition with said COMPANY, or handle any similar line of competing products to those manufactured or sold by this COMPANY, within the territory described in this AGREEMENT, either as representative, agent, or employee of any other company or concern.

ATLOW  ELECTRIC  MANUFACTURING  COMPANY

TELEPHONE: 314-878-4600 • • • • TELEX: 44-2428

-3-

## DURATION OF AGREEMENT:

This contract shall be for a period of one (1) year commencing April 16, 1974 and shall automatically renew itself for similar one (1) year periods thereafter, providing, however, that either party hereto may at any time, during the life of this contract, or any extension thereof, cancel and terminate this AGREEMENT by the service of written notice to such effect upon the other party, whereupon said contract shall thereafter cease and terminate in all respects thirty (30) days following the service of such written notice. For the purpose of this paragraph "written notice" shall be deemed served upon the other party by the deposit thereof in the form of certified mail with return receipt requested in the U.S. mails, addressed to the last known address of the other party.

IN WITNESS WHEREOF, parties have hereunto set their hands this sixteenth day of April 1974.

MARLOW JORDAHL, REPRESENTATIVE

WATLOW ELECTRIC MFG. COMPANY

By

COMPANY

12001 LACKLAND ROAD, ST. LOUIS, MISSOURI 63141

JORDAHL

# WATLOW ELECTRIC MANUFACTURING COMPANY

TELEPHONE: 314-878-4600 • • • • • TELEX: 44-2428



This AGREEMENT, made at St. Louis, Missouri, this first day of April 1975 by and between WATLOW ELECTRIC MANUFACTURING COMPANY of St. Louis, Missouri, hereinafter called the COMPANY, and MARLOW JORDAHL, Cincinnati, Ohio, hereinafter termed the REPRESENTATIVE.

In consideration of the execution of this AGREEMENT on the part of both parties hereto, and of the mutual promises and covenants herein contained, made each to the other, COMPANY and REPRESENTATIVE hereby agree that REPRESENTATIVE shall exert his best efforts to promote the sale of the COMPANY'S products, in the territory hereinafter defined, consummating such sales and executing such contracts in the COMPANY'S behalf as shall be expressly authorized in writing by the COMPANY.

## TERRITORY:

All the counties in Ohio south of and including the counties of Van Wert, Allen, Hardin, Union and Delaware. West of and including the counties of Franklin, Fairfield, Hocking, Vinton, Jackson and Scioto.

All the counties in Indiana south of and including the following counties: Allen, Wells, Grant, Howard, Carroll, Tippecanoe and Warren.

All counties in Kentucky EXCEPT those counties west of and including the counties of Union, Crittenden, Caldwell and Trigg and the county of Boyd in the northeastern section of the state.

## QUOTATION:

REPRESENTATIVES agree to quote only those prices and terms as are established by the COMPANY. Quotations for heating units not listed by the COMPANY, or its competitors, will be made by the COMPANY.

## COMMISSION:

REPRESENTATIVE shall receive as compensation for his services a commission on the total selling price of all sales of the COMPANY'S products in his territory as follows:    All St. Louis products will return 4% with the exception of product codes (24) and (50) which will return .86% on orders less than $10,000, .57% for orders greater than $10,000 each. Orders for Hannibal products will return 4% for orders discounted from 0 to 45%, 2.86% on orders discounted from 46 to 49% and 1.71% for orders discounted at 50% or greater.

Payments will be made on the 20th of the month following shipments to customers.

**EXHIBIT**

B

ALL-STATE® INTERNATIONAL

# ATLOW ELECTRIC MANUFACTURING COMPANY
TELEPHONE: 314-878-4600 • • • • • TELEX: 44-2428



## EXPENSES:

COMPANY agrees to reimburse REPRESENTATIVE all travel and other expenses reasonably and necessarily incurred in promoting the sale of the COMPANY'S products and in the performance of his duties as set forth in this contract.

## ENGINEERING AND SERVICING:

REPRESENTATIVE agrees to engineer and service applications of COMPANY products in the territory described herein.

## AUTHORITY:

REPRESENTATIVE has no authority to receipt for money, nor to bind the COMPANY to any contracts, agreements, or undertakings, verbal or written, or any amendments or alterations of any of the foregoing, except those written contracts or written amendments thereof which have been submitted to and approved by the COMPANY in St. Louis. It is further expressly understood and agreed that at all times herein, REPRESENTATIVE shall occupy the position of an independent contractor with respect to the COMPANY in the conduct of his affairs and in any actions which he may undertake in the discharge of his duties under this contract.

## COLLECTIONS:

REPRESENTATIVE agrees to protect the COMPANY to the best of his ability against loss, and will cooperate in the collection of credit information, delinquent accounts, etc., in any manner as requested by the COMPANY.

## TRADE SECRETS AND CONFIDENTIAL INFORMATION:

REPRESENTATIVE further acknowledges, recognizes and understands that the COMPANY is possessed of trade secrets and certain confidential information in connection with its business, and hereby agrees not to disclose directly or indirectly to any person, organization or company, or to use any of said COMPANY'S trade secrets, experimental data, inventions, discoveries, improvements, designs, methods, systems developments, "know-how", ideas, suggestions, devices, processes, and the like, or any other private or confidential information of the COMPANY which shall be acquired by, disclosed to, or come to his attention or knowledge as a REPRESENTATIVE of said COMPANY, except under the express written direction of said COMPANY. Upon the termination of this AGREE-MENT by either party hereto, REPRESENTATIVE agrees that he will not take with him, retain, or thereafter use, in any way, any designs, drawings, prints, or confidential data, memoranda or information, or copies thereof, without the written consent of said COMPANY.

## NON-COMPETE COVENANT:

REPRESENTATIVE further agrees that for a period of one (1) year after termination of this AGREEMENT, he will not, directly or indirectly, engage in any business in competition with

12001 LACKLAND ROAD, ST. LOUIS, MISSOURI 63141

**ATLOW ELECTRIC MANUFACTURING COMPANY**

TELEPHONE: 314-878-4600 • • • • • TELEX: 44-2428

-3-

said COMPANY, or handle any similar line of competing products to those manufactured or sold by this COMPANY, within the territory described in this AGREEMENT, either as representative, agent, or employee of any other company or concern.

<u>DURATION OF AGREEMENT:</u>

This contract shall be for a period of one (1) year commencing April 1, 1975 and shall automatically renew itself for similar one (1) year periods thereafter, providing, however, that either party hereto may at any time, during the life of this contract, or any extension thereof, cancel and terminate this AGREEMENT by the service of written notice to such effect upon the other party, whereupon said contract shall thereafter cease and terminate in all respects thirty (30) days following the service of such written notice. For the purpose of this paragraph "written notice" shall be deemed served upon the other party by the deposit thereof in the form of certified mail with return receipt requested in the U.S. mails, addressed to the last known address of the other party.

IN WITNESS WHEREOF, parties have hereunto set their hands this first day of April 1975.

MARLOW JORDAHL, REPRESENTATIVE

WATLOW ELECTRIC MFG. COMPANY

By _____
                    COMPANY

 **ELECTRIC MANUFACTURING COMPANY** 

## SALES REPRESENTATION AGREEMENT

⌐This SALES REPRESENTATION AGREEMENT, hereinafter called Agreement, is made and entered into at St. Louis County, Missouri, this 1st day of December, 1976 by and between WATLOW ELECTRIC MANUFACTURING COMPANY, hereinafter called the COMPANY, and MARLOW JORDAHL, hereinafter called REPRESENTATIVE, with respect to the sales representation by REPRESENTATIVE, for the products and services of the COMPANY.

In consideration of the execution of this Agreement on the part of both parties hereto, and of the promises and covenants herein made and contained, the COMPANY and REPRESENTATIVE. hereby agree as follows:

### DUTIES:

REPRESENTATIVE shall exert his best efforts to promote the sale of those products of the COMPANY listed in Exhibit A attached hereto, which Exhibit may be from time to time modified or amended by written notice of additions or deletions made by the COMPANY in its sole and absolute discretion, within the territory hereinafter defined, consummating such sales, handling customer relations and inquiries and executing such contracts in behalf of the COMPANY as shall be hereafter expressly authorized in writing by the COMPANY. REPRESENTATIVE shall well and faithfully represent the COMPANY and use his utmost endeavors to promote its interests. All sales of COMPANY products shall be subject to acceptance by the COMPANY at its headquarters in St. Louis County, Missouri. REPRESENTATIVE shall not sell or offer for sale, during the effective period of this Agreement, or any extensions hereof, any products or services of any other company or business organization.

### TERRITORY:

The only geographical territory in which REPRESENTATIVE is authorized to solicit orders or to offer the said products of the COMPANY for sale is specified in Exhibit B attached hereto. The COMPANY may, in its sole and absolute discretion, modify or amend this territory by giving written notice of additions or deletions at least 30 days prior to the effective date of such modification or amendment.

### QUOTATIONS:

REPRESENTATIVE agrees to quote only those prices, warranties and terms of sale, shipment and delivery as are established by the COMPANY. Quotations will be made by the COMPANY for non-standard heating units or other products or quantities of products not listed on standard price lists by the COMPANY.

### COMPENSATION:

) REPRESENTATIVE shall receive as sole and total compensation for his services a commission which shall be computed as a percentage, as is specified in Exhibit C attached hereto, of the net billed amount of shipments made by the COMPANY on sales completed within your territory during the effective period of this Agreement. "Net billed amount of shipments" means the gross billed **EXHIBIT**

C

WATLOW ELECTRIC MANUFACTURING COMPANY



-2-

sales price of merchandise sold and shipped less cash or prompt payment discounts, returns, claims, allowances, special packaging charges, separately billed charges for tooling or engineering services, sales taxes, freight charges and bad debts. "Sales completed within your territory" means orders accepted by the COMPANY and actually shipped to the customer if the order was either (a) physically issued from a customer's purchasing office located in your territory or, (b) shipped to a customer destination located in your territory of if, (c) in the COMPANY'S sole and absolute discretion, you participated significantly in the customer's decision to purchase the products which were shipped by making sales and/or engineering contacts with customer personnel within your territory.

In the event that all of items (a), (b) and (c) above do not occur within your territory or in the event that some other sales agent of the company also significantly participates in the customer's purchase decision, then the total commission percentages shown in Exhibit C will be split among the sales or manufacturers representatives of the COMPANY in the following manner:

50% of the total commission percentage shall be credited to the territory (or territories) or sales agent(s) in which the engineering or purchase decision, in the COMPANY'S sole and absolute discretion, was made. The COMPANY may, in its sole and absolute discretion, allocate this amount among several territories or sales agents depending on the COMPANY'S judgment as to the contribution of such sales agents in significantly contributing to the customer's decision to purchase the COMPANY's product. If there was no specific engineering decision which was significant, in the COMPANY'S opinion, in ordering specifying COMPANY products, then this credit shall go to or among the territory(ies) where the purchase decision was made.

25% of the total commission percentage shall be credited to the REPRESENTATIVE into whose territory the billing for the order is directed.

25% of the total commission percentage shall be credited to the REPRESENTATIVE into whose territory the order is shipped.

Commissions are not earned until date of shipment and will be paid on the 20th day of the month following shipments to customers. Any adjustments to commissions previously paid, due to returns, claims, allowances, bad debts and the like will be made on the 20th of the month following the credit, adjustment or settlement to or with the customer.

# WATLOW ELECTRIC MANUFACTURING COMPANY



-3-

If this Agreement is terminated by either party, or if territorial or product deletions or additions are made by COMPANY, then REPRESENTATIVE shall receive commission for all firm orders accepted by the COMPANY prior to such termination, deletion, or addition on the basis of the version of the Agreement in effect at the time of the termination or deletion, which are in good faith and in the regular course of business shipped by the COMPANY during the 90 day period following such termination, deletion or addition.

The total commission percentages and the split or allocation of same indicated above may be modified or amended by the COMPANY at any time in its sole discretion upon 30 days advance notice to REPRESENTATIVE.

## EXPENSES:

COMPANY agrees to reimburse REPRESENTATIVE for all travel and other expenses reasonably and necessarily incurred, in the COMPANY'S opinion, in promoting the sale of the COMPANY'S products and in the performance of his duties as set forth in this Agreement to the extent they are properly documented and verified to the COMPANY. REPRESENTATIVE shall obtain prior approval from the COMPANY for any expense item or related group of items exceeding $150.00.

## ENGINEERING AND SERVICING:

REPRESENTATIVE agrees to provide engineering services through the COMPANY to customers and to service the customer applications of COMPANY products in the territory described herein.

## AUTHORITY:

REPRESENTATIVE has no authority, express or implied, to receipt for money on behalf of COMPANY, nor to bind or obligate the COMPANY to any contracts, agreements, or undertakings, verbal or written, or any amendments or alterations of any of the foregoing, except those written contracts or written amendments which have been submitted to and approved by the COMPANY in St. Louis. It is further expressly understood and agreed that at all times herein REPRESENTATIVE shall occupy the position of an independent contractor with respect to the COMPANY in the conduct of his affairs and in actions which he may undertake in the discharge of his duties under this Agreement and neither party shall exercise control over the activities or methods of operation of the other except as specified within this Agreement.

## COLLECTIONS:

REPRESENTATIVE agrees to protect the COMPANY to the best of his ability against loss, and will cooperate in the collection of credit information, delinquent accounts, and so forth, in any manner requested by the COMPANY.

## TRADE SECRETS AND CONFIDENTIAL INFORMATION:

REPRESENTATIVE further acknowledges, recognizes and understands that the COMPANY is possessed of trade secrets and certain confidential information in connection with its business, and

**WATLOW** ELECTRIC MANUFACTURING COMPANY          -4-



hereby agrees not to disclose directly or indirectly to any person, organization or company, or to use any of said COMPANY'S trade secrets, experimental data, inventions, discoveries, improvements, designs, methods, systems developments, "know-how", ideas, suggestions, devices, processes, and the like, or any other private or confidential information of the COMPANY which shall be acquired by, disclosed to, or come to his attention or knowledge as a REPRESENTATIVE of COMPANY, except under the express written direction of said COMPANY. Upon the termination of this AGREEMENT by either party hereto, REPRESENTATIVE agrees that he will not take with him, retain, or thereafter use, in any way, any designs, drawings, prints, invoices, customer correspondence, customer lists, Application Handbooks, technical letters of the COMPANY, product samples, or confidential data, memoranda or information, or copies thereof, all of which are and shall remain the sole properties of COMPANY, without the written consent of said COMPANY.

## NON-COMPETITION COVENANT:

REPRESENTATIVE further agrees that for a period of one (1) year after termination of this AGREEMENT, he will not, directly or indirectly, engage in any business in competition with said COMPANY, or handle any similar line of competing products to those manufactured or sold by the COMPANY, within the territory described in this AGREEMENT, either as representative, agent, consultant or employee of any other company or business concern. REPRESENTATIVE recognizes and agrees that money damages to COMPANY for breach of this covenant may be extremely difficult or impossible to ascertain and therefore acknowledges and agrees that injuctive relief for enforcement of this covenant, in addition to other legal remedies, is proper and appropriate.

## EFFECTIVE PERIOD OF AGREEMENT:

This Agreement shall be for a period of one (1) year commencing    December 1    , 19  76 and shall automatically renew itself for similar one (1) year periods thereafter, providing, however, that either party hereto may at any time, during the life of this Agreement, or any extension thereof, cancel and terminate this Agreement by the service of written notice to such effect upon the other party, whereupon said Agreement shall thereafter cease and terminate in all respects thirty (30) days following the service of such written notice. For the purpose of this paragraph "written notice" shall be deemed served upon the other party by the deposit thereof, first class postage prepaid, in the form of certified mail with return receipt requested, in the U. S. mails, addressed to the last known address of the other party.

## MISCELLANEOUS:

This instrument and the Exhibits attached hereto, as they may be modified in writing from time hereafter, constitutes the entire agreement between the parties and no unwritten modifications or amendments hereto shall be effective. This Agreement shall be construed in accordance with the laws of the State of Missouri where it has been accepted on behalf of the COMPANY.

IN WITNESS WHEREOF, the parties have hereunto set their hands as of the date and year first above written.

_____
REPRESENTATIVE

WATLOW ELECTRIC MANUFACTURING CO.

By_____
                        COMPANY

_____
REPRESENTATIVE

 ELECTRIC MANUFACTURING COMPANY



## EXHIBIT A – PRODUCTS

A) All products manufactured by Watlow Electric Manufacturing Company –
St. Louis, Missouri.

B) All products manufactured by Watlow Industries, Inc. – Hannibal, Missouri.

C) All products manufactured by Watlow-Winona, Inc. – Winona, Minnesota

## EXHIBIT B – TERRITORY

All counties in Ohio south of and including the counties of Van Wert, Allen, Hardin,
Union and Delaware. West of and including the counties of Franklin, Fairfield, Hocking,
Vinton, Jackson and Scioto.

All counties in Indiana south of and including the following counties: Allen, Wells, Grant,
Howard, Carroll, Tippecanoe and Warren.

All counties in Kentucky EXCEPT those counties west of and including the counties of Union,
Crittenden, Caldwell and Trigg; also the counties of Greenup and Boyd in the northeastern
section of the state.

## EXHIBIT C – TOTAL COMMISSION PERCENTAGES

Products listed in Exhibit A, points A and C will return 4% with the exception of product
codes (24) and (50) which will return .86% on orders less than $10,000, .57% for orders
greater than $10,000 each. The following accounts for products listed in Exhibit A,
point C will return 2.0%: Corpane. Orders for products listed in Exhibit A, point B,
will return 4% for orders discounted from 0 to 45%, 2.86% on orders discounted from 46
to 49% and 1.71% for orders discounted 50% or greater.

 **ELECTRIC MANUFACTURING COMPANY** 

This SALES REPRESENTATION AGREEMENT, hereinafter called Agreement, is made and entered into at St. Louis County, Missouri, this 1st day of January, 1979 by and between WATLOW ELECTRIC MANUFACTURING COMPANY, hereinafter called the COMPANY, and MARLOW JORDAHL, hereinafter called REPRESENTATIVE, with respect to the sales representation by REPRESENTATIVE, for the products and services of the COMPANY.

In consideration of the execution of this Agreement on the part of both parties hereto, and of the promises and covenants herein made and contained, the COMPANY and REPRESENTATIVE hereby agree as follows:

## DUTIES:

REPRESENTATIVE shall exert his best efforts to promote the sale of those products of the COMPANY listed in Exhibit A attached hereto, which Exhibit may be from time to time modified or amended by written notice of additions or deletions made by the COMPANY in its sole and absolute discretion, within the territory hereinafter, defined, consummating such sales, handling customer relations and inquiries and executing such contracts in behalf of the COMPANY as shall be hereafter expressly authorized in writing by the COMPANY. REPRESENTATIVE shall well and faithfully represent the COMPANY and use his utmost endeavors to promote its interests. All sales of COMPANY products shall be subjected to acceptance by the COMPANY at its headquarters in St. Louis County, Missouri. REPRESENTATIVE shall not sell or offer for sale, during the effective period of this Agreement, or any extensions hereof, any products or services of any other company or business organization.

## TERRITORY:

The only geographical territory in which REPRESENTATIVE is authorized to solicit orders or to offer the said products of the COMPANY for sale is specified in Exhibit B attached hereto. The COMPANY may, in its sole and absolute discretion, modify or amend this territory by giving written notice of additions or deletions at least 30 days prior to the effective date of such modification or amendment.

## QUOTATIONS:

REPRESENTATIVE agrees to quote only those prices, warranties and terms of sale, shipment and delivery as are established by the COMPANY. Quotations will be made by the COMPANY for non-standard heating units or other products or quantities of products not listed on standard price lists by the COMPANY.

## COMPENSATION:

REPRESENTATIVE shall receive as sole and total compensation for his services a commission which shall be computed as a percentage, as is specified in Exhibit C attached hereto, of the net billed amount of shipments made by the COMPANY on sales completed within your territory during the effective period of this Agreement. "Net billed amount of shipments" means the gross billed

**EXHIBIT**

**D**

WATLOW **ELECTRIC MANUFACTURING COMPANY**



-2-

sales price of merchandise sold and shipped less cash or prompt payment discounts, returns, claims, allowances, special packaging charges, separately billed charges for tooling or engineering services, sales taxes, freight charges and bad debts. "Sales completed within your territory" means orders accepted by the COMPANY and actually shipped to the customer if the order was either (a) physically issued from a customer's purchasing office located in your territory or, (b) shipped to a customer destination located in your territory of if, (c) in the COMPANY'S sole and absolute discretion, you participated significantly in the customer's decision to purchase the products which were shipped by making sales and/or engineering contacts with customer personnel within your territory.

In the event that all of items (a), (b) and (c) above do not occur within your territory or in the event that some other sales agent of the company also significantly participates in the customer's purchase decision, then the total commission percentages shown in Exhibit C will be split among the sales or manufacturers representatives of the COMPANY in the following manner:

50% of the total commission percentage shall be credited to the territory (or territories) or sales agent(s) in which the engineering or purchase decision, in the COMPANY'S sole and absolute discretion, was made. The COMPANY may, in its sole and absolute discretion, allocate this amount among several territories or sales agents depending on the COMPANY'S judgment as to the contribution of such sales agents in significantly contributing to the customer's decision to purchase the COMPANY's product. If there was no specific engineering decision which was significant, in the COMPANY'S opinion, in ordering specifying COMPANY products, then this credit shall go to or among the territory(ies) where the purchase decision was made.

25% of the total commission percentage shall be credited to the REPRESENTATIVE into whose territory the billing for the order is directed.

25% of the total commission percentage shall be credited to the REPRESENTATIVE into whose territory the order is shipped.

Commissions are not earned until date of shipment and will be paid on the 20th day of the month following shipments to customers. Any adjustments to commissions previously paid, due to returns, claims, allowances, bad debts and the like will be made on the 20th of the month following the credit, adjustment or settlement to or with the customer.

WATLOW **ELECTRIC MANUFACTURING COMPANY** 

-3-

— If this Agreement is terminated by either party, or if territorial or product deletions or additions are made by COMPANY, then REPRESENTATIVE shall receive commission for all firm orders accepted by the COMPANY prior to such termination, deletion, or addition on the basis of the version of the Agreement in effect at the time of the termination or deletion, which are in good faith and in the regular course of business shipped by the COMPANY during the 90 day period following such termination, deletion or addition.

The total commission percentages and the split or allocation of same indicated above may be modified or amended by the COMPANY at any time in its sole discretion upon 30 days advance notice to REPRESENTATIVE.

EXPENSES:

COMPANY agrees to reimburse REPRESENTATIVE for all travel and other expenses reasonably and necessarily incurred, in the COMPANY'S opinion, in promoting the sale of the COMPANY'S products and in the performance of his duties as set forth in this Agreement to the extent they are properly documented and verified to the COMPANY. REPRESENTATIVE shall obtain prior approval from the COMPANY for any expense item or related group of items exceeding $150.00.

ENGINEERING AND SERVICING:

REPRESENTATIVE agrees to provide engineering services through the COMPANY to customers and to service the customer applications of COMPANY products in the territory described herein.

AUTHORITY:

REPRESENTATIVE has no authority, express or implied, to receipt for money on behalf of COMPANY, nor to bind or obligate the COMPANY to any contracts, agreements, or undertakings, verbal or written, or any amendments or alterations of any of the foregoing, except those written contracts or written amendments which have been submitted to and approved by the COMPANY in St. Louis. It is further expressly understood and agreed that at all times herein REPRESENTATIVE shall occupy the position of an independent contractor with respect to the COMPANY in the conduct of his affairs and in actions which he may undertake in the discharge of his duties under this Agreement and neither party shall exercise control over the activities or methods of operation of the other except as specified within this Agreement.

COLLECTIONS:

REPRESENTATIVE agrees to protect the COMPANY to the best of his ability against loss, and will cooperate in the collection of credit information, delinquent accounts, and so forth, in any manner requested by the COMPANY.

TRADE SECRETS AND CONFIDENTIAL INFORMATION:

REPRESENTATIVE further acknowledges, recognizes and understands that the COMPANY is possessed of trade secrets and certain confidential information in connection with its business, and

# WATLOW ELECTRIC MANUFACTURING COMPANY



-4-

hereby agrees not to disclose directly or indirectly to any person, organization or company, or to use any of said COMPANY'S trade secrets, experimental data, inventions, discoveries, improvements, designs, methods, systems developments, "know-how", ideas, suggestions, devices, processes, and the like, or any other private or confidential information of the COMPANY which shall be acquired by, disclosed to, or come to his attention or knowledge as a REPRESENTATIVE of COMPANY, except under the express written direction of said COMPANY.  Upon the termination of this AGREEMENT by either party hereto, REPRESENTATIVE agrees that he will not take with him, retain, or thereafter use, in any way, any designs, drawings, prints, invoices, customer correspondence, customer lists, Application Handbooks, technical letters of the COMPANY, product samples, or confidential data, memoranda or information, or copies thereof, all of which are and shall remain the sole properties of COMPANY, without the written consent of said COMPANY.

## NON-COMPETITION COVENANT:

REPRESENTATIVE further agrees that for a period of one (1) year after termination of this AGREEMENT, he will not, directly or indirectly, engage in any business in competition with said COMPANY, or handle any similar line of competing products to those manufactured or sold by the COMPANY, within the territory described in this AGREEMENT, either as representative, agent, consultant or employee of any other company or business concern.  REPRESENTATIVE recognizes and agrees that money damages to COMPANY for breach of this covenant may be extremely difficult or impossible to ascertain and therefore acknowledges and agrees that injuctive relief for enforcement of this covenant, in addition to other legal remedies, is proper and appropriate.

## EFFECTIVE PERIOD OF AGREEMENT:

This Agreement shall be for a period of one (1) year commencing January 1         , 19 79 and shall automatically renew itself for similar one (1) year periods thereafter, providing, however, that either party hereto may at any time, during the life of this Agreement, or any extension thereof, cancel and terminate this Agreement by the service of written notice to such effect upon the other party, whereupon said Agreement shall thereafter cease and terminate in all respects thirty (30) days following the service of such written notice.  For the purpose of this paragraph "written notice" shall be deemed served upon the other party by the deposit thereof, first class postage prepaid, in the form of certified mail with return receipt requested, in the U. S. mails, addressed to the last known address of the other party.

## MISCELLANEOUS:

This instrument and the Exhibits attached hereto, as they may be modified in writing from time hereafter, constitutes the entire agreement between the parties and no unwritten modifications or amendments hereto shall be effective.  This Agreement shall be construed in accordance with the laws of the State of Missouri where it has been accepted on behalf of the COMPANY.

IN WITNESS WHEREOF, the parties have hereunto set their hands as of the date and year first above written.

_____
REPRESENTATIVE

WATLOW ELECTRIC MANUFACTURING CO.

By _____
COMPANY

 **ELECTRIC MANUFACTURING COMPANY** 

## EXHIBIT A – PRODUCTS

A) All products manufactured by Watlow Electric Manufacturing Company – St. Louis, Missouri.

B) All products manufactured by Watlow Industries, Inc. – Hannibal, Missouri.

C) All products manufactured by Watlow-Winona, Inc. – Winona, Minnesota.

D) All products manufactured by Watlow-Batavia, Inc. – Batavia, Illinois.

## EXHIBIT B – TERRITORY

All counties in Ohio south of and including the counties of Van Wert, Allen, Hardin, Union and Delaware. West of and including the counties of Franklin, Fairfield, Hocking, Vinton, Jackson and Scioto.

All counties in Indiana south of and including the following counties: Allen, Wells, Grant, Howard, Carroll, Tippecanoe and Warren.

All counties in Kentucky EXCEPT those counties west of and including the counties of Union, Crittenden, Caldwell and Trigg; also the counties of Greenup and Boyd in the northeastern section of the state.

## EXHIBIT C – TOTAL COMMISSION PERCENTAGES

Products listed in Exhibit A, points A, C and D will return 2.86% with the exception of product codes (24) and (50) which will return .62% on orders less than $10,000, .41% for orders greater than $10,000 each. Orders for products listed in Exhibit A, point B, will return 2.86% for orders discounted from 0 to 45%, 2.04% on orders discounted from 46% to 49% and 1.22% for orders discounted 50% or greater.

WATLOW FORBAH
January 1, 1979

 **ELECTRIC MANUFACTURING COMPANY**



## EXHIBIT A - PRODUCTS

A)  All products manufactured by Watlow Electric Manufacturing Company – St. Louis, Missouri.

B)  All products manufactured by Watlow Industries, Inc. – Hannibal, Missouri.

C)  All products manufactured by Watlow-Winona, Inc. – Winona, Minnesota.

D)  All products manufactured by Watlow-Batavia, Inc. – Batavia, Illinois.

## EXHIBIT B - TERRITORY

All counties in Ohio south of and including the counties of Van Wert, Allen, Hardin, Union and Delaware. West of and including the counties of Franklin, Fairfield, Hocking, Vinton, Jackson and Scioto.

All counties in Indiana south of and including the following counties: Allen, Wells, Grant, Howard, Carroll, Tippecanoe and Warren.

All counties in Kentucky EXCEPT those counties west of and including the counties of Union, Crittenden, Caldwell and Trigg; also the counties of Greenup and Boyd in the northeastern section of the state.

## EXHIBIT C - TOTAL COMMISSION PERCENTAGES

Products listed in Exhibit A, points A, C and D will return 2.86% with the exception of product codes (24) and (50) which will return .62% on orders less than $10,000, .41% for orders greater than $10,000 each. Orders for products listed in Exhibit A, point B, will return 2.86% for orders discounted from 0 to 45%, 2.04% on orders discounted from 46% to 49% and 1.22% for orders discounted 50% or greater.

 ELECTRIC MANUFACTURING COMPANY



This SALES REPRESENTATION AGREEMENT, hereinafter called Agreement, is made and entered into at St. Louis County, Missouri, this 1st day of November, 1983 by and between WATLOW ELECTRIC MANUFACTURING COMPANY, hereinafter called the COMPANY, and MARLOW JORDAHL, hereinafter called REPRESENTATIVE, with respect to the sales representation by REPRESENTATIVE, for the products and services of the COMPANY.

In consideration of the execution of this Agreement on the part of both parties hereto, and of the promises and covenants herein made and contained, the COMPANY and REPRESENTATIVE hereby agree as follows:

DUTIES:
REPRESENTATIVE shall exert his best efforts to promote the sale of those products of the COMPANY listed in Exhibit A attached hereto, which Exhibit may be from time to time modified or amended by written notice of additions or deletions made by the COMPANY in its sole and absolute discretion, within the territory hereinafter defined, consummating such sales, handling customer relations and inquiries and executing such contracts in behalf of the COMPANY as shall be hereafter expressly authorized in writing by the COMPANY. REPRESENTATIVE shall well and faithfully represent the COMPANY and use his utmost endeavors to promote its interests. All sales of COMPANY products shall be subjected to acceptance by the COMPANY at its headquarters in St. Louis County, Missouri. REPRESENTATIVE shall not sell or offer for sale, during the effective period of this Agreement, or any extensions hereof, any products or services of any other company or business organization.

TERRITORY:
The only geographical territory in which REPRESENTATIVE is authorized to solicit orders or to offer the said products of the COMPANY for sale is specified in Exhibit B attached hereto. The COMPANY may, in its sole and absolute discretion, modify or amend this territory by giving written notice of additions or deletions at least 30 days prior to the effective date of such modification or amendment.

QUOTATIONS:
REPRESENTATIVE agrees to quote only those prices, warranties and terms of sale, shipment and delivery as are established by the COMPANY. Quotations will be made by the COMPANY for non-standard heating units or other products or quantities of products not listed on standard price lists by the COMPANY.

COMPENSATION:
REPRESENTATIVE shall receive as sole and total compensation for his services a commission which shall be computed as a percentage, as is specified in Exhibit C attached hereto, of the net billed amount of shipments made by the COMPANY on sales completed within your territory during the effective period of this Agreement. "Net billed amount of shipments" means the gross billed sales price of merchandise sold and shipped less cash or prompt payment discounts, returns, claims, allowances, special packaging charges, separately billed charges for tooling or engineerng services, sales taxes, freight charges and bad debts. "Sales completed within your territory" means orders accepted by the COMPANY and actually shipped to the customer if the order was either (a) physically issued from a customer's purchasing office located in your

**EXHIBIT**

E

# WATLOW ELECTRIC MANUFACTURING COMPANY



-2-

territory or, (b) shipped to a customer destination located in your territory or if, (c) in the COMPANY'S sole and absolute discretion, you participated significantly in the customer's decision to purchase the products which were shipped by making sales and/or engineering contacts with customer personnel within your territory.

In the event that all of items (a), (b) and (c) above do not occur within your territory or in the event that some other sales agent of the company also significantly participates in the customer's purchase decision, then the total commission percentages shown in Exhibit C will be split among the sales or manufacturers representatives of the COMPANY in the following manner:

50%   of the total commission percentage shall be credited to the territory (or territories) or sales agent(s) in which the engineering or purchase decision, in the COMPANY'S sole and absolute discretion, was made. The COMPANY may, in its sole and absolute discretion, allocate this amount among several territories or sales agents depending on the COMPANY'S judgment as to the contribution of such sales agents in significantly contributing to the customer's decision to purchase the COMPANY'S product. If there was no specific engineering decision which was significant, in the COMPANY'S opinion, in ordering specifying COMPANY products, then this credit shall go to or among the territory(ies) where the purchase decision was made.

25%   of the total commission percentage shall be credited to the REPRESENTATIVE into whose territory the billing for the order is directed.

25%   of the total commission percentage shall be credited to the REPRESENTATIVE into whose territory the order is shipped.

Commissions are not earned until date of shipment and will be paid on the 20th day of the month following shipments to customers. Any adjustments to commissions previously paid, due to returns, claims, allowances, bad debts and the like will be made on the 20th of the month following the credit, adjustment or settlement to or with the customer.

If this Agreement is terminated by either party, or if territorial or product deletions or additions are made by COMPANY, then REPRESENTATIVE shall receive commission for all firm orders accepted by the COMPANY prior to such termination, deletion, or addition on the basis of the version of the Agreement in effect at the time of the termination or deletion, which are in good faith and in the regular course of business shipped by the COMPANY during the 90 day period following such termination, deletion or addition.

The total commission percentages and the split or allocation of same indicated above may be modified or amended by the COMPANY at any time in its sole discretion upon 30 days advance notice to REPRESENTATIVE.

 ELECTRIC MANUFACTURING COMPANY



-3-

EXPENSES:

COMPANY agrees to reimburse REPRESENTATIVE for all travel and other expenses reasonably and necessarily incurred, in the COMPANY'S opinion, in promoting the sale of the COMPANY'S products and in the performance of his duties as set forth in this Agreement to the extent they are properly documented and verified to the COMPANY. REPRESENTATIVE shall obtain prior approval from the COMPANY for any expense item or related group of items exceeding $150.000.

ENGINEERING AND SERVICING:

REPRESENTATIVE agrees to provide engineering services through the COMPANY to customers and to service the customer applications of COMPANY products in the territory described herein.

AUTHORITY:

REPRESENTATIVE has no authority, express or implied, to receipt for money on behalf of COMPANY, not to bind or obligate the COMPANY to any contracts, agreements, or under-takings, verbal or written, or any amendments or alterations of any of the foregoing, except those written contracts or written amendments which have been submitted to and approved by the COMPANY in St. Louis. It is further expressly understood and agreed that at all times herein REPRESENTATIVE shall occupy the position of an independent contractor with respect to the COMPANY in the conduct of his affairs and in actions which he may undertake in the discharge of his duties under this Agreement and neither party shall exercise control over the activities or methods of operation of the other except as specified within this Agreement.

COLLECTIONS:

REPRESENTATIVE agrees to protect the COMPANY to the best of his ability against loss, and will cooperate in the collection of credit information, delinquent accounts, and so forth, in any manner requested by the COMPANY.

TRADE SECRETS AND CONFIDENTIAL INFORMATION:

REPRESENTATIVE further acknowledges, recognizes and understands that the COMPANY is possessed of trade secrets and certain confidential information in connection with its business, and hereby agrees not to disclose directly or indirectly to any person, organization or company, or to use any of said COMPANY'S trade secrets, experimental data, inventions, discoveries, improvements, designs, methods, systems developments, "know-how", ideas, suggestions, devices, processes, and the like, or any other private or confidential information of the COMPANY which shall be acquired by, disclosed to, or come to his attention or knowledge as a REPRESENTATIVE of COMPANY, except under the express written direction of said COMPANY. Upon the termination of this AGREEMENT by either party hereto, REPRESENTATIVE agrees that he will not take with him, retain, or thereafter use, in any way, any designs, drawings, prints, invoices, customer correspondence, customer lists, Application Handbooks, technical letters of the COMPANY, product samples, or confidential data, memoranda or information, or copies thereof, all of which are and shall remain the sole properties of COMPANY, without the written consent of said COMPANY.

NON-COMPETITION COVENANT:

REPRESENTATIVE further agrees that for a period of one (1) year after termination of this AGREEMENT, he will not, directly or indirectly, engage in any business in competition

 **ELECTRIC MANUFACTURING COMPANY**



-4-

with said COMPANY, or handle any similar line of competing products to those manufactured or sold by the COMPANY, within the territory described in this AGREEMENT, either as representative, agent, consultant or employee of any other company or business concern. REPRESENTATIVE recognizes and agrees that money damages to COMPANY for breach of this covenant may be extremely difficult or impossible to ascertain and therefore acknowledges and agrees that injuctive relief for enforcement of this covenant, in addition to other legal remedies, is proper and appropriate.

### EFFECTIVE PERIOD OF AGREEMENT:

This Agreement shall be for a period of one (1) year commencing Nov. 1       , 1983 and shall automatically renew itself for similar one (1) year periods thereafter, providing, however, that either party hereto may at any time, during the life of this Agreement, or any extension thereof, cancel and terminate this Agreement by the service of written notice to such effect upon the other party, whereupon said Agreement shall thereafter cease and terminate in all respects thirty (30) days following the service of such written notice. For the purpose of this paragraph "written notice" shall be deemed served upon the other party by the deposit thereof, first class postage prepaid, in the form of certified mail with return receipt requested, in the U. S. mails, addressed to the last known address of the other party.

### MISCELLANEOUS:

This instrument and the Exhibits attached hereto, as they may be modified in writing from time hereafter, constitutes the entire agreement between the parties and no unwritten modifications or amendments hereto shall be effective. This Agreement shall be construed in accordance with the laws of the State of Missouri where it has been accepted on behalf of the COMPANY.

IN WITNESS WHEREOF, the parties have hereunto set their hands as of the date and year first above written.

WATLOW ELECTRIC MANUFACTURING CO.

_____    By: _____
REPRESENTATIVE                          COMPANY

 ELECTRIC MANUFACTURING COMPANY 

## EXHIBIT A - PRODUCTS

A)   All products manufactured by Watlow Electric Manufacturing Company - St. Louis, Missouri.

B)   All products manufactured by Watlow-Winona, Inc. - Winona, Minnesota.

C)   All products manufactured by Watlow Batavia, Inc. - Batavia, Illinois.

D)   All products manufactured by Watlow-Columbia, Inc. - Columbia, Missouri.

E)   All products manufactured by Watlow Industries, Inc. - Hannibal, Missouri.

F)   All products manufactured by Pacific Heater Company, Inc. - Pacific, Missouri.

## EXHIBIT B - TERRITORY

All counties in Ohio south of and including the counties of Van Wert, Allen, Hardin, Union and Delaware.  West of and including the counties of Franklin, Fairfield, Hocking, Vinton, Jackson and Scioto.

All counties in Kentucky EXCEPT those counties west of and including the counties of Union, Crittenden, Caldwell and Trigg;  also the counties of Greenup and Boyd in the northeastern section of the state.

## EXHIBIT C - TOTAL COMMISSION PERCENTAGES

Products listed in Exhibit A, points A, B, C, D & E will return 4.00% with the exception of product codes (24) and (92) which are non-commissionable.  Product listed in Exhibit A, point F will return 2.00%.