

# WATLOW ELECTRIC MANUFACTURING COMPANY

This SALES REPRESENTATION AGREEMENT, hereinafter called Agreement, is made and entered into at St. Louis County, Missouri, this **1st day of January, 1993**, by and between WATLOW ELECTRIC MANUFACTURING COMPANY, hereinafter called the COMPANY, and MARLOW JORDAHL, hereinafter called REPRESENTATIVE, with respect to the sales representation by REPRESENTATIVE, for the products and services of the COMPANY.

In consideration of the execution of this Agreement on the part of both parties hereto, and of the promises and covenants herein made and contained, the COMPANY and REPRESENTATIVE hereby agree as follows:

## DUTIES:

REPRESENTATIVE shall exert REPRESENTATIVE'S best efforts to promote the sale of those products of the COMPANY listed in Schedule A below, which Schedule may be from time to time modified or amended by written notice of additions or deletions made by the COMPANY in its sole and absolute discretion, within the territory hereinafter defined. REPRESENTATIVE shall consummate such sales, handle such customer relations and inquiries and execute such contracts in behalf of the COMPANY only as shall be hereafter expressly authorized in writing by the COMPANY. REPRESENTATIVE shall well and faithfully represent the COMPANY and use REPRESENTATIVE'S utmost endeavors to promote its interests. All sales of COMPANY products shall be subject to acceptance by the COMPANY at its headquarters in St. Louis County, Missouri.

## TERRITORY:

The only geographical territory in which REPRESENTATIVE is authorized to solicit orders or to offer the said products of the COMPANY for sale is that specified territory ("Territory") in Schedule B below. The COMPANY may, in its sole and absolute discretion, modify or amend this Territory by written notice of additions or deletions at least 30 days prior to the effective date of such modification or amendment.

## QUOTATIONS:

REPRESENTATIVE agrees to quote only those prices, warranties and terms of sale, shipment and delivery as are established by the COMPANY. Quotations will be made by the COMPANY for non-standard products or other products or quantities of products not listed on standard price lists by the COMPANY.

## COMPENSATION:

REPRESENTATIVE shall receive as sole and total compensation for his services a commission which shall be computed as a percentage, as is specified in Schedule C below, of the net billed amount of shipments made by the COMPANY on sales completed within REPRESENTATIVE'S Territory during the effective period of this Agreement. "Net billed amount of shipments" means the gross billed sales price of merchandise sold and shipped less cash or prompt payment discounts, returns, claims, allowances, special packaging charges, separately billed charges for tooling or engineering services (except Watlow Winona, Inc. engineering charges), sales taxes, freight charges and bad debts. "Sales completed within the Territory" means orders accepted by the COMPANY and actually shipped to the customer if the order was:

(a)    physically issued from a customer's purchasing office located in the Territory; and

(b)    shipped to a customer destination located in the Territory; and



EXHIBIT
K
ALL-STATE® INTERNATIONAL

WATLOW ELECTRIC MANUFACTURING COMPANY



(c)    in the COMPANY'S sole and absolute discretion, REPRESENTATIVE participated significantly in the customer's decision to purchase the products which were shipped by making sales and/or engineering contacts with customer personnel within the Territory.

In the event that either (a), (b) or (c) above do not occur within the Territory or in the event that some other sales representative of the COMPANY also significantly participates in the customer's purchase decision, then the total commission percentages shown in Schedule C will be split among the sales representatives of the COMPANY in the following manner:

50%    of the total commission percentage shall be credited to the sales REPRESENTATIVE in whose territory (or territories) the engineering or purchase decision, in the COMPANY'S opinion, was made. The COMPANY may, in its sole and absolute discretion, allocate this amount among several sales REPRESENTATIVES depending on the COMPANY'S judgement as to the contribution of such REPRESENTATIVES in significantly contributing to the customer's decision to purchase the COMPANY'S product. If there was no specific engineering decision which was significant, in the COMPANY'S opinion, in ordering specifying COMPANY products, then this credit shall go to or among the sales REPRESENTATIVE(S) in whose territory(ies) the purchase decision was made.

25%    of the total commission percentage shall be credited to the REPRESENTATIVE into whose territory the billing for the order is directed.

25%    of the total commission percentage shall be credited to the REPRESENTATIVE into whose territory the order is shipped.

Commissions are not earned until date of shipment and will be paid on the third Friday of the month following shipments to customers. Any adjustments to commissions previously paid, due to returns, claims, allowances, bad debts and the like, will be made on the third Friday of the month following the credit, adjustment or settlement to or with the customer.

If representation of the COMPANY is terminated by either party, unless representation is terminated for cause, including breach by REPRESENTATIVE of this Agreement, or if territorial or product deletions or additions are made by COMPANY, then REPRESENTATIVE shall receive commission for all firm orders accepted by the COMPANY prior to such termination, deletion, or addition on the basis of the version of the Agreement in effect at the time of the termination, deletion or addition, which are in good faith and in the regular course of business shipped by the COMPANY during the ninety (90) days period following such termination, deletion or addition.

The total commission percentages and the split or allocation of same indicated above may be modified or amended by the COMPANY at any time in its sole discretion upon thirty (30) days advance notice to REPRESENTATIVE.

ADVANCE AGAINST COMMISSIONS:
The COMPANY may advance against commissions to be earned by REPRESENTATIVE such amounts from time to time as the COMPANY may determine. Such advances shall be credited against commissions earned by REPRESENTATIVE. If at the time of any termination of this Agreement the amounts advanced by the COMPANY exceed the commissions earned by REPRESENTATIVE, then REPRESENTATIVE shall promptly pay to the COMPANY the amount of such excess.

# WATLOW ELECTRIC MANUFACTURING COMPANY



## OFFICE AND FACILITIES:

REPRESENTATIVE agrees to maintain an office location approved by COMPANY in the Territory, a telephone, a telephone listing in both the White and Yellow Pages for service areas in the Territory in form approved by COMPANY, and such word processing, telefax and other order processing and communication equipment as COMPANY may request from time to time. REPRESENTATIVE shall bear the full expense of the foregoing.

## OBLIGATIONS TO COMPANY:

REPRESENTATIVE agrees that the COMPANY may withhold as a setoff against commissions payable by the COMPANY to REPRESENTATIVE pursuant to this Agreement, any amounts which REPRESENTATIVE may owe to the COMPANY for any reason. REPRESENTATIVE waives any rights against the COMPANY and agrees to hold harmless the COMPANY with respect to any claim arising from such withholding and setoff so long as such action is taken by the COMPANY in good faith.

## ENGINEERING AND SERVICING:

REPRESENTATIVE agrees to provide engineering services through the COMPANY to customers and to service the customer applications of COMPANY products in the Territory.

## AUTHORITY:

REPRESENTATIVE has no authority, express or implied, to receipt for money on behalf of COMPANY, to bind or obligate the COMPANY to any contracts, agreements, or undertakings, verbal or written, or any amendments or alterations of any of the foregoing, except those written contracts or written amendments which have been submitted to and approved by the COMPANY in St. Louis County, Missouri. It is further expressly understood and agreed that at all times herein REPRESENTATIVE shall occupy the position of an independent contractor with respect to the COMPANY in the conduct of REPRESENTATIVE'S affairs and in actions which REPRESENTATIVE may undertake in the discharge of REPRESENTATIVE'S duties under this Agreement and neither party shall exercise control over the activities or methods of operation of the other except as specified within this Agreement.

## COLLECTIONS:

REPRESENTATIVE agrees to protect the COMPANY to the best of REPRESENTATIVE'S ability against loss, and will cooperate in the collection of credit information, delinquent accounts, and so forth, in any manner requested by the COMPANY.

## TRADE SECRETS AND CONFIDENTIAL INFORMATION:

REPRESENTATIVE further acknowledges, recognizes, understands and agrees that the COMPANY possesses trade secrets and certain confidential information in connection with its business. REPRESENTATIVE hereby agrees not to disclose directly or indirectly to any person, organization or company, or to use any of said COMPANY'S trade secrets or confidential information, including but not limited to experimental data, inventions, discoveries, improvements, designs, methods, systems developments, "know-how", ideas, suggestions, devices, processes, and any information of the COMPANY which shall be acquired by, disclosed to, or come to REPRESENTATIVE'S attention or knowledge as a REPRESENTATIVE of COMPANY, except under the express written direction of the COMPANY. Upon the termination of this Agreement by either party hereto, REPRESENTATIVE agrees not to take, retain, or thereafter use, in any way, any designs, drawings, prints, invoices, customer correspondence, customer lists, Application Handbooks, technical letters of the COMPANY, product samples, or confidential data, memoranda or information, or copies thereof, all of which are and shall remain the sole properties of COMPANY, without the express written direction of the COMPANY.

 ELECTRIC MANUFACTURING COMPANY



## NON-COMPETITION COVENANT:

REPRESENTATIVE agrees that during the term of this Agreement and for a period of eighteen (18) months after termination of this Agreement, REPRESENTATIVE will not, directly or indirectly, whether as a shareholder, director, officer, employee, agent, representative, partner, proprietor, joint venturer, consultant or otherwise, engage in any business activity in competition with said COMPANY, or handle any similar line of products competing with those manufactured or sold by COMPANY, within the Territory described in this Agreement. For purposes hereof, COMPANY shall include all organizations related to Watlow Electric Manufacturing Company, including but not limited to parent and subsidiary corporations and organizations under common control.

REPRESENTATIVE recognizes and agrees that irreparable injury will result to COMPANY, its business and property in the event of a breach of this covenant not to compete and agrees that in the event of any violation of the covenant not to compete contained herein, that COMPANY shall be entitled, in addition to any other legal or equitable remedy available, to the issuance of restraining orders or injunctions, both temporary and permanent, in order to restrict the violation thereof by REPRESENTATIVE, his partners, agents, representatives, servants, employees and employers, and all persons for or with them. In addition, COMPANY may recover its attorneys' fees in enforcing the covenant not to compete contained herein. In the event that any provision contained in this covenant not to compete is found to be unreasonable by a court, said court may modify the provisions hereof so as to effect the intent of the parties and make them reasonable and enforceable.

## EFFECTIVE PERIOD OF AGREEMENT:

This Agreement shall be for a period of one (1) year commencing **January 1, 1993**, and shall automatically renew itself for similar one (1) year periods thereafter, provided, however, that either party hereto may at any time, during the life of this Agreement, or any extension thereof, cancel and terminate this Agreement by the service of written notice to such effect upon the other party, at least thirty (30) days in advance stating the effective date of termination. For the purposes of this paragraph "written notice" shall be deemed served upon the party by the deposit thereof, first class postage prepaid, in the form of certified mail with return receipt requested, in the U. S. mails, addressed to the last known address of the other party.

## RELATIONSHIP BETWEEN THE PARTIES:

REPRESENTATIVE and the COMPANY acknowledge and agree that REPRESENTATIVE is an independent contractor of the COMPANY and that this Agreement does not establish any employment, partnership or other relationship between the parties. REPRESENTATIVE is not entitled to any pension, welfare or any other benefits available to employees of the COMPANY.

## MISCELLANEOUS:

This instrument and the Schedules below constitute the entire agreement between the parties. No unwritten modifications or amendments hereto shall be effective. This Agreement shall be construed in accordance with the laws of the State of Missouri where it has been accepted on behalf of the COMPANY.

 ELECTRIC MANUFACTURING COMPANY 

## SCHEDULE A - PRODUCTS

A)      All products manufactured by Watlow St. Louis, Inc. - St. Louis, Missouri.

B)      All products manufactured by Watlow-Winona, Inc. - Winona, Minnesota.

C)      All products manufactured by Watlow Batavia, Inc. - Batavia, Illinois.

D)      All products manufactured by Watlow-Columbia, Inc. - Columbia, Missouri.

E)      All products manufactured by Watlow Industries, Inc. - Hannibal, Missouri.

F)      All products manufactured by Pacific Heater Company, Inc. - Pacific, Missouri.

G)      All products manufactured by Watlow Infrared Company - Decorah, Iowa

H)      All products manufactured by Watlow Electric Mfg. Co. GmbH, Kronau,
        West Germany.

I)      All products manufactured by Watlow Process Systems, Inc., Troy, Missouri.

J)      All products manufactured by Watlow AOV, Inc. - Anaheim, California.

## SCHEDULE B - TERRITORY

All counties in Ohio south of and including the counties of Van Wert, Allen, Hardin, Union and Delaware, west of and including the counties of Franklin, Fairfield, Hocking, Vinton, Jackson and Scioto. All counties in Kentucky EXCEPT those counties west of and including the counties of Union, Crittenden, Caldwell and Trigg.

## SCHEDULE C - TOTAL COMMISSION PERCENTAGES

Products listed in Schedule A, points A, B, C, D, E, G, H, I, and J will return 3.60%.
Product listed in Schedule A, point F will return 1.80%.

# WATLOW ELECTRIC MANUFACTURING COMPANY



IN WITNESS WHEREOF, the parties have hereunto set their hands as of the date and year first above written.

REPRESENTATIVE:                    COMPANY:

                                   WATLOW ELECTRIC MFG. COMPANY

_____            By: _____
MARLOW JORDAHL

ADDRESS:

_____
_____

 **ELECTRIC MANUFACTURING COMPANY**



This SALES REPRESENTATION AGREEMENT, hereinafter called Agreement, is made and entered into at St. Louis County, Missouri, this **1st day of March, 1993**, by and between WATLOW ELECTRIC MANUFACTURING COMPANY, hereinafter called the COMPANY, and MARLOW JORDAHL, hereinafter called REPRESENTATIVE, with respect to the sales representation by REPRESENTATIVE, for the products and services of the COMPANY.

In consideration of the execution of this Agreement on the part of both parties hereto, and of the promises and covenants herein made and contained, the COMPANY and REPRESENTATIVE hereby agree as follows:

## DUTIES:

REPRESENTATIVE shall exert REPRESENTATIVE'S best efforts to promote the sale of those products of the COMPANY listed in Schedule A below, which Schedule may be from time to time modified or amended by written notice of additions or deletions made by the COMPANY in its sole and absolute discretion, within the territory hereinafter defined. REPRESENTATIVE shall consummate such sales, handle such customer relations and inquiries and execute such contracts in behalf of the COMPANY only as shall be hereafter expressly authorized in writing by the COMPANY. REPRESENTATIVE shall well and faithfully represent the COMPANY and use REPRESENTATIVE'S utmost endeavors to promote its interests. All sales of COMPANY products shall be subject to acceptance by the COMPANY at its headquarters in St. Louis County, Missouri.

## TERRITORY:

The only geographical territory in which REPRESENTATIVE is authorized to solicit orders or to offer the said products of the COMPANY for sale is that specified territory ("Territory") in Schedule B below. The COMPANY may, in its sole and absolute discretion, modify or amend this Territory by written notice of additions or deletions at least 30 days prior to the effective date of such modification or amendment.

## QUOTATIONS:

REPRESENTATIVE agrees to quote only those prices, warranties and terms of sale, shipment and delivery as are established by the COMPANY. Quotations will be made by the COMPANY for non-standard products or other products or quantities of products not listed on standard price lists by the COMPANY.

## COMPENSATION:

REPRESENTATIVE shall receive as sole and total compensation for his services a commission which shall be computed as a percentage, as is specified in Schedule C below, of the net billed amount of shipments made by the COMPANY on sales completed within REPRESENTATIVE'S Territory during the effective period of this Agreement. "Net billed amount of shipments" means the gross billed sales price of merchandise sold and shipped less cash or prompt payment discounts, returns, claims, allowances, special packaging charges, separately billed charges for tooling or engineering services (except Watlow Winona, Inc. engineering charges), sales taxes, freight charges and bad debts. "Sales completed within the Territory" means orders accepted by the COMPANY and actually shipped to the customer if the order was:

(a)    physically issued from a customer's purchasing office located in the Territory; and

(b)    shipped to a customer destination located in the Territory; and

| EXHIBIT |
| --- |
| L |
| ALL-STATE® INTERNATIONAL |

 **ELECTRIC MANUFACTURING COMPANY**

(c)     in the COMPANY'S sole and absolute discretion, REPRESENTATIVE participated significantly in the customer's decision to purchase the products which were shipped by making sales and/or engineering contacts with customer personnel within the Territory.

In the event that either (a), (b) or (c) above do not occur within the Territory or in the event that some other sales representative of the COMPANY also significantly participates in the customer's purchase decision, then the total commission percentages shown in <u>Schedule C</u> will be split among the sales representatives of the COMPANY in the following manner:

50%     of the total commission percentage shall be credited to the sales REPRESENTATIVE in whose territory (or territories) the engineering or purchase decision, in the COMPANY'S opinion, was made. The COMPANY may, in its sole and absolute discretion, allocate this amount among several sales REPRESENTATIVES depending on the COMPANY'S judgement as to the contribution of such REPRESENTATIVES in significantly contributing to the customer's decision to purchase the COMPANY'S product. If there was no specific engineering decision which was significant, in the COMPANY'S opinion, in ordering specifying COMPANY products, then this credit shall go to or among the sales REPRESENTATIVE(S) in whose territory(ies) the purchase decision was made.

25%     of the total commission percentage shall be credited to the REPRESENTATIVE into whose territory the billing for the order is directed.

25%     of the total commission percentage shall be credited to the REPRESENTATIVE into whose territory the order is shipped.

Commissions are not earned until date of shipment and will be paid on the third Friday of the month following shipments to customers. Any adjustments to commissions previously paid, due to returns, claims, allowances, bad debts and the like, will be made on the third Friday of the month following the credit, adjustment or settlement to or with the customer.

If representation of the COMPANY is terminated by either party, unless representation is terminated for cause, including breach by REPRESENTATIVE of this Agreement, or if territorial or product deletions or additions are made by COMPANY, then REPRESENTATIVE shall receive commission for all firm orders accepted by the COMPANY prior to such termination, deletion, or addition on the basis of the version of the Agreement in effect at the time of the termination, deletion or addition, which are in good faith and in the regular course of business shipped by the COMPANY during the ninety (90) days period following such termination, deletion or addition.

The total commission percentages and the split or allocation of same indicated above may be modified or amended by the COMPANY at any time in its sole discretion upon thirty (30) days advance notice to REPRESENTATIVE.

<u>ADVANCE AGAINST COMMISSIONS:</u>
The COMPANY may advance against commissions to be earned by REPRESENTATIVE such amounts from time to time as the COMPANY may determine. Such advances shall be credited against commissions earned by REPRESENTATIVE. If at the time of any termination of this Agreement the amounts advanced by the COMPANY exceed the commissions earned by REPRESENTATIVE, then REPRESENTATIVE shall promptly pay to the COMPANY the amount of such excess.

 ELECTRIC MANUFACTURING COMPANY



## OFFICE AND FACILITIES:

REPRESENTATIVE agrees to maintain an office location approved by COMPANY in the Territory, a telephone, a telephone listing in both the White and Yellow Pages for service areas in the Territory in form approved by COMPANY, and such word processing, telefax and other order processing and communication equipment as COMPANY may request from time to time. REPRESENTATIVE shall bear the full expense of the foregoing.

## OBLIGATIONS TO COMPANY:

REPRESENTATIVE agrees that the COMPANY may withhold as a setoff against commissions payable by the COMPANY to REPRESENTATIVE pursuant to this Agreement, any amounts which REPRESENTATIVE may owe to the COMPANY for any reason. REPRESENTATIVE waives any rights against the COMPANY and agrees to hold harmless the COMPANY with respect to any claim arising from such withholding and setoff so long as such action is taken by the COMPANY in good faith.

## ENGINEERING AND SERVICING:

REPRESENTATIVE agrees to provide engineering services through the COMPANY to customers and to service the customer applications of COMPANY products in the Territory.

## AUTHORITY:

REPRESENTATIVE has no authority, express or implied, to receipt for money on behalf of COMPANY, to bind or obligate the COMPANY to any contracts, agreements, or undertakings, verbal or written, or any amendments or alterations of any of the foregoing, except those written contracts or written amendments which have been submitted to and approved by the COMPANY in St. Louis County, Missouri. It is further expressly understood and agreed that at all times herein REPRESENTATIVE shall occupy the position of an independent contractor with respect to the COMPANY in the conduct of REPRESENTATIVE'S affairs and in actions which REPRESENTATIVE may undertake in the discharge of REPRESENTATIVE'S duties under this Agreement and neither party shall exercise control over the activities or methods of operation of the other except as specified within this Agreement.

## COLLECTIONS:

REPRESENTATIVE agrees to protect the COMPANY to the best of REPRESENTATIVE'S ability against loss, and will cooperate in the collection of credit information, delinquent accounts and so forth, in any manner requested by the COMPANY.

## TRADE SECRETS AND CONFIDENTIAL INFORMATION:

REPRESENTATIVE further acknowledges, recognizes, understands and agrees that the COMPANY possesses trade secrets and certain confidential information in connection with its business. REPRESENTATIVE hereby agrees not to disclose directly or indirectly to any person, organization or company, or to use any of said COMPANY'S trade secrets or confidential information, including but not limited to experimental data, inventions, discoveries, improvements, designs, methods, systems developments, "know-how", ideas, suggestions, devices, processes, and any information of the COMPANY which shall be acquired by, disclosed to, or come to REPRESENTATIVE'S attention or knowledge as a REPRESENTATIVE of COMPANY, except under the express written direction of the COMPANY. Upon the termination of this Agreement by either party hereto, REPRESENTATIVE agrees not to take, retain, or thereafter use, in any way, any designs, drawings, prints, invoices, customer correspondence, customer lists, Application Handbooks, technical letters of the COMPANY, product samples, or confidential data, memoranda or information, or copies thereof, all of which are and shall remain the sole properties of COMPANY, without the express written direction of the COMPANY.

 ELECTRIC MANUFACTURING COMPANY



## NON-COMPETITION COVENANT:

REPRESENTATIVE agrees that during the term of this Agreement and for a period of eighteen (18) months after termination of this Agreement, REPRESENTATIVE will not, directly or indirectly, whether as a shareholder, director, officer, employee, agent, representative, partner, proprietor, joint venturer, consultant or otherwise, engage in any business activity in competition with said COMPANY, or handle any similar line of products competing with those manufactured or sold by COMPANY, within the Territory described in this Agreement. For purposes hereof, COMPANY shall include all organizations related to Watlow Electric Manufacturing Company, including but not limited to parent and subsidiary corporations and organizations under common control.

REPRESENTATIVE recognizes and agrees that irreparable injury will result to COM-PANY, its business and property in the event of a breach of this covenant not to compete and agrees that in the event of any violation of the covenant not to compete contained herein, that COMPANY shall be entitled, in addition to any other legal or equitable remedy available, to the issuance of restraining orders or injunctions, both temporary and permanent, in order to restrict the violation thereof by REPRESENTATIVE, his partners, agents, representatives, servants, employees and employers, and all persons for or with them. In addition, COMPANY may recover its attorneys' fees in enforcing the covenant not to compete contained herein. In the event that any provision contained in this covenant not to compete is found to be unreasonable by a court, said court may modify the provisions hereof so as to effect the intent of the parties and make them reasonable and enforceable.

## EFFECTIVE PERIOD OF AGREEMENT:

This Agreement shall be for a period of one (1) year commencing **March 1, 1993**, and shall automatically renew itself for similar one (1) year periods thereafter, provided, however, that either party hereto may at any time, during the life of this Agreement, or any extension thereof, cancel and terminate this Agreement by the service of written notice to such effect upon the other party, at least thirty (30) days in advance stating the effective date of termination. For the purposes of this paragraph "written notice" shall be deemed served upon the party by the deposit thereof, first class postage prepaid, in the form of certified mail with return receipt requested, in the U. S. mails, addressed to the last known address of the other party.

## RELATIONSHIP BETWEEN THE PARTIES:

REPRESENTATIVE and the COMPANY acknowledge and agree that REPRESENTATIVE is an independent contractor of the COMPANY and that this Agreement does not establish any employment, partnership or other relationship between the parties. REPRESENTATIVE is not entitled to any pension, welfare or any other benefits available to employees of the COMPANY.

## MISCELLANEOUS:

This instrument and the Schedules below constitute the entire agreement between the parties. No unwritten modifications or amendments hereto shall be effective. This Agreement shall be construed in accordance with the laws of the State of Missouri where it has been accepted on behalf of the COMPANY.

WATLOW ELECTRIC MANUFACTURING COMPANY

## SCHEDULE A - PRODUCTS

A)    All products manufactured by Watlow St. Louis, Inc. - St. Louis, Missouri.

B)    All products manufactured by Watlow-Winona, Inc. - Winona, Minnesota.

C)    All products manufactured by Watlow Batavia, Inc. - Batavia, Illinois.

D)    All products manufactured by Watlow-Columbia, Inc. - Columbia, Missouri.

E)    All products manufactured by Watlow Industries, Inc. - Hannibal, Missouri.

F)    All products manufactured by Pacific Heater Company, Inc. - Pacific, Missouri.

G)    All products manufactured by Watlow Infrared Company - Decorah, Iowa

H)    All products manufactured by Watlow Electric Mfg. Co. GmbH, Kronau,
      West Germany.

I)    All products manufactured by Watlow Process Systems, Inc., Troy, Missouri.

J)    All products manufactured by Watlow AOV, Inc. - Anaheim, California.

## SCHEDULE B - TERRITORY

All counties in Ohio south of and including the counties of Van Wert, Allen, Hardin, Union and Delaware, west of and including the counties of Franklin, Fairfield, Hocking, Vinton, Jackson and Scioto.  All counties in Kentucky EXCEPT those counties west of and including the counties of Union, Crittenden, Caldwell and Trigg.

## SCHEDULE C - TOTAL COMMISSION PERCENTAGES

Products listed in Schedule A, points A, B, C, D, E, G, H, I, and J will return 3.52%.
Product listed in Schedule A, point F will return 1.76%.

# WATLOW ELECTRIC MANUFACTURING COMPANY



IN WITNESS WHEREOF, the parties have hereunto set their hands as of the date and year first above written.

REPRESENTATIVE:                    COMPANY:

                                   WATLOW ELECTRIC MFG. COMPANY

_____          By: _____
MARLOW JORDAHL                                    4/2/93

ADDRESS:

_____
_____

 ELECTRIC MANUFACTURING COMPANY 

This SALES REPRESENTATION AGREEMENT, hereinafter called Agreement, is made and entered into at St. Louis County, Missouri, this **1st day of May, 1993**, by and between WATLOW ELECTRIC MANUFACTURING COMPANY, hereinafter called the COMPANY, and MARLOW JORDAHL, hereinafter called REPRESENTATIVE, with respect to the sales representation by REPRESENTATIVE, for the products and services of the COMPANY.

In consideration of the execution of this Agreement on the part of both parties hereto, and of the promises and covenants herein made and contained, the COMPANY and REPRESENTATIVE hereby agree as follows:

DUTIES:
REPRESENTATIVE shall exert REPRESENTATIVE'S best efforts to promote the sale of those products of the COMPANY listed in Schedule A below, which Schedule may be from time to time modified or amended by written notice of additions or deletions made by the COMPANY in its sole and absolute discretion, within the territory hereinafter defined. REPRESENTATIVE shall consummate such sales, handle such customer relations and inquiries and execute such contracts in behalf of the COMPANY only as shall be hereafter expressly authorized in writing by the COMPANY. REPRESENTATIVE shall well and faithfully represent the COMPANY and use REPRESENTATIVE'S utmost endeavors to promote its interests. All sales of COMPANY products shall be subject to acceptance by the COMPANY at its headquarters in St. Louis County, Missouri.

TERRITORY:
The only geographical territory in which REPRESENTATIVE is authorized to solicit orders or to offer the said products of the COMPANY for sale is that specified territory ("Territory") in Schedule B below. The COMPANY may, in its sole and absolute discretion, modify or amend this Territory by written notice of additions or deletions at least 30 days prior to the effective date of such modification or amendment.

QUOTATIONS:
REPRESENTATIVE agrees to quote only those prices, warranties and terms of sale, shipment and delivery as are established by the COMPANY. Quotations will be made by the COMPANY for non-standard products or other products or quantities of products not listed on standard price lists by the COMPANY.

COMPENSATION:
REPRESENTATIVE shall receive as sole and total compensation for his services a commission which shall be computed as a percentage, as is specified in Schedule C below, of the net billed amount of shipments made by the COMPANY on sales completed within REPRESENTATIVE'S Territory during the effective period of this Agreement. "Net billed amount of shipments" means the gross billed sales price of merchandise sold and shipped less cash or prompt payment discounts, returns, claims, allowances, special packaging charges, separately billed charges for tooling or engineering services (except Watlow Winona, Inc. engineering charges), sales taxes, freight charges and bad debts. "Sales completed within the Territory" means orders accepted by the COMPANY and actually shipped to the customer if the order was:

(a)    physically issued from a customer's purchasing office located in the Territory; and

(b)    shipped to a customer destination located in the Territory; and

EXHIBIT

M

ALL-STATE® INTERNATIONAL



WATLOW ELECTRIC MANUFACTURING COMPANY

(c)    in the COMPANY'S sole and absolute discretion, REPRESENTATIVE participated significantly in the customer's decision to purchase the products which were shipped by making sales and/or engineering contacts with customer personnel within the Territory.

In the event that either (a), (b) or (c) above do not occur within the Territory or in the event that some other sales representative of the COMPANY also significantly participates in the customer's purchase decision, then the total commission percentages shown in Schedule C will be split among the sales representatives of the COMPANY in the following manner:

50%    of the total commission percentage shall be credited to the sales REPRESENTATIVE in whose territory (or territories) the engineering or purchase decision, in the COMPANY'S opinion, was made. The COMPANY may, in its sole and absolute discretion, allocate this amount among several sales REPRESENTATIVES depending on the COMPANY'S judgement as to the contribution of such REPRESENTATIVES in significantly contributing to the customer's decision to purchase the COMPANY'S product. If there was no specific engineering decision which was significant, in the COMPANY'S opinion, in ordering specifying COMPANY products, then this credit shall go to or among the sales REPRESENTATIVE(S) in whose territory(ies) the purchase decision was made.

25%    of the total commission percentage shall be credited to the REPRESENTATIVE into whose territory the billing for the order is directed.

25%    of the total commission percentage shall be credited to the REPRESENTATIVE into whose territory the order is shipped.

Commissions are not earned until date of shipment and will be paid on the third Friday of the month following shipments to customers. Any adjustments to commissions previously paid, due to returns, claims, allowances, bad debts and the like, will be made on the third Friday of the month following the credit, adjustment or settlement to or with the customer.

If representation of the COMPANY is terminated by either party, unless representation is terminated for cause, including breach by REPRESENTATIVE of this Agreement, or if territorial or product deletions or additions are made by COMPANY, then REPRESENTATIVE shall receive commission for all firm orders accepted by the COMPANY prior to such termination, deletion, or addition on the basis of the version of the Agreement in effect at the time of the termination, deletion or addition, which are in good faith and in the regular course of business shipped by the COMPANY during the ninety (90) days period following such termination, deletion or addition.

The total commission percentages and the split or allocation of same indicated above may be modified or amended by the COMPANY at any time in its sole discretion upon thirty (30) days advance notice to REPRESENTATIVE.

ADVANCE AGAINST COMMISSIONS:

The COMPANY may advance against commissions to be earned by REPRESENTATIVE such amounts from time to time as the COMPANY may determine. Such advances shall be credited against commissions earned by REPRESENTATIVE. If at the time of any termination of this Agreement the amounts advanced by the COMPANY exceed the commissions earned by REPRESENTATIVE, then REPRESENTATIVE shall promptly pay to the COMPANY the amount of such excess.

 ELECTRIC MANUFACTURING COMPANY 

## OFFICE AND FACILITIES:

REPRESENTATIVE agrees to maintain an office location approved by COMPANY in the Territory, a telephone, a telephone listing in both the White and Yellow Pages for service areas in the Territory in form approved by COMPANY, and such word processing, telefax and other order processing and communication equipment as COMPANY may request from time to time. REPRESENTATIVE shall bear the full expense of the foregoing.

## OBLIGATIONS TO COMPANY:

REPRESENTATIVE agrees that the COMPANY may withhold as a setoff against commissions payable by the COMPANY to REPRESENTATIVE pursuant to this Agreement, any amounts which REPRESENTATIVE may owe to the COMPANY for any reason. REPRESENTATIVE waives any rights against the COMPANY and agrees to hold harmless the COMPANY with respect to any claim arising from such withholding and setoff so long as such action is taken by the COMPANY in good faith.

## ENGINEERING AND SERVICING:

REPRESENTATIVE agrees to provide engineering services through the COMPANY to customers and to service the customer applications of COMPANY products in the Territory.

## AUTHORITY:

REPRESENTATIVE has no authority, express or implied, to receipt for money on behalf of COMPANY, to bind or obligate the COMPANY to any contracts, agreements, or undertakings, verbal or written, or any amendments or alterations of any of the foregoing, except those written contracts or written amendments which have been submitted to and approved by the COMPANY in St. Louis County, Missouri. It is further expressly understood and agreed that at all times herein REPRESENTATIVE shall occupy the position of an independent contractor with respect to the COMPANY in the conduct of REPRESENTATIVE'S affairs and in actions which REPRESENTATIVE may undertake in the discharge of REPRESENTATIVE'S duties under this Agreement and neither party shall exercise control over the activities or methods of operation of the other except as specified within this Agreement.

## COLLECTIONS:

REPRESENTATIVE agrees to protect the COMPANY to the best of REPRESENTATIVE'S ability against loss, and will cooperate in the collection of credit information, delinquent accounts, and so forth, in any manner requested by the COMPANY.

## TRADE SECRETS AND CONFIDENTIAL INFORMATION:

REPRESENTATIVE further acknowledges, recognizes, understands and agrees that the COMPANY possesses trade secrets and certain confidential information in connection with its business. REPRESENTATIVE hereby agrees not to disclose directly or indirectly to any person, organization or company, or to use any of said COMPANY'S trade secrets or confidential information, including but not limited to experimental data, inventions, discoveries, improvements, designs, methods, systems developments, "know-how", ideas, suggestions, devices, processes, and any information of the COMPANY which shall be acquired by, disclosed to, or come to REPRESENTATIVE'S attention or knowledge as a REPRESENTATIVE of COMPANY, except under the express written direction of the COMPANY. Upon the termination of this Agreement by either party hereto, REPRESENTATIVE agrees not to take, retain, or thereafter use, in any way, any designs, drawings, prints, invoices, customer correspondence, customer lists, Application Handbooks, technical letters of the COMPANY, product samples, or confidential data, memoranda or information, or copies thereof, all of which are and shall remain the sole properties of COMPANY, without the express written direction of the COMPANY.

 ELECTRIC MANUFACTURING COMPANY



## NON-COMPETITION COVENANT:

REPRESENTATIVE agrees that during the term of this Agreement and for a period of eighteen (18) months after termination of this Agreement, REPRESENTATIVE will not, directly or indirectly, whether as a shareholder, director, officer, employee, agent, representative, partner, proprietor, joint venturer, consultant or otherwise, engage in any business activity in competition with said COMPANY, or handle any similar line of products competing with those manufactured or sold by COMPANY, within the Territory described in this Agreement. For purposes hereof, COMPANY shall include all organizations related to Watlow Electric Manufacturing Company, including but not limited to parent and subsidiary corporations and organizations under common control.

REPRESENTATIVE recognizes and agrees that irreparable injury will result to COMPANY, its business and property in the event of a breach of this covenant not to compete and agrees that in the event of any violation of the covenant not to compete contained herein, that COMPANY shall be entitled, in addition to any other legal or equitable remedy available, to the issuance of restraining orders or injunctions, both temporary and permanent, in order to restrict the violation thereof by REPRESENTATIVE, his partners, agents, representatives, servants, employees and employers, and all persons for or with them. In addition, COMPANY may recover its attorneys' fees in enforcing the covenant not to compete contained herein. In the event that any provision contained in this covenant not to compete is found to be unreasonable by a court, said court may modify the provisions hereof so as to effect the intent of the parties and make them reasonable and enforceable.

## EFFECTIVE PERIOD OF AGREEMENT:

This Agreement shall be for a period of one (1) year commencing **May 1, 1993**, and shall automatically renew itself for similar one (1) year periods thereafter, provided, however, that either party hereto may at any time, during the life of this Agreement, or any extension thereof, cancel and terminate this Agreement by the service of written notice to such effect upon the other party, at least thirty (30) days in advance stating the effective date of termination. For the purposes of this paragraph "written notice" shall be deemed served upon the party by the deposit thereof, first class postage prepaid, in the form of certified mail with return receipt requested, in the U. S. mails, addressed to the last known address of the other party.

## RELATIONSHIP BETWEEN THE PARTIES:

REPRESENTATIVE and the COMPANY acknowledge and agree that REPRESENTATIVE is an independent contractor of the COMPANY and that this Agreement does not establish any employment, partnership or other relationship between the parties. REPRESENTATIVE is not entitled to any pension, welfare or any other benefits available to employees of the COMPANY.

## MISCELLANEOUS:

This instrument and the Schedules below constitute the entire agreement between the parties. No unwritten modifications or amendments hereto shall be effective. This Agreement shall be construed in accordance with the laws of the State of Missouri where it has been accepted on behalf of the COMPANY.

 ELECTRIC MANUFACTURING COMPANY



## SCHEDULE A - PRODUCTS

A)   All products manufactured by Watlow St. Louis, Inc. - St. Louis, Missouri.

B)   All products manufactured by Watlow-Winona, Inc. - Winona, Minnesota.

C)   All products manufactured by Watlow Batavia, Inc. - Batavia, Illinois.

D)   All products manufactured by Watlow-Columbia, Inc. - Columbia, Missouri.

E)   All products manufactured by Watlow Industries, Inc. - Hannibal, Missouri.

F)   All products manufactured by Pacific Heater Company, Inc. - Pacific, Missouri.

G)   All products manufactured by Watlow Infrared Company - Decorah, Iowa

H)   All products manufactured by Watlow Electric Mfg. Co. GmbH, Kronau,
     West Germany.

I)   All products manufactured by Watlow Process Systems, Inc., Troy, Missouri.

J)   All products manufactured by Watlow AOV, Inc. - Anaheim, California.

## SCHEDULE B - TERRITORY

All counties in Ohio south of and including the counties of Van Wert, Allen, Hardin, Union and Delaware, west of and including the counties of Franklin, Fairfield, Hocking, Vinton, Jackson and Scioto.  All counties in Kentucky EXCEPT those counties west of and including the counties of Union, Crittenden, Caldwell and Trigg.

## SCHEDULE C - TOTAL COMMISSION PERCENTAGES

Products listed in Schedule A, points A, B, C, D, E, G, H, I, and J will return 3.26%.
Product listed in Schedule A, point F will return 1.63%.

 **ELECTRIC MANUFACTURING COMPANY**



IN WITNESS WHEREOF, the parties have hereunto set their hands as of the date and year first above written.

REPRESENTATIVE:

_____
MARLOW JORDAHL

ADDRESS:

1713 Falcon Lin
Loveland Ohio 45140

COMPANY:

WATLOW ELECTRIC MFG. COMPANY

By: _____
        5/25/93

**MARLOW JORDAHL**

**WATLOW**

**Watlow Electric
Manufacturing Co.**

12001 Lackland Road
St. Louis, MO 63146
Phone: 314-878-4600
FAX: 314-878-6814

This SALES REPRESENTATION AGREEMENT, hereinafter called Agreement, is made and entered into at St. Louis County, Missouri, this **1st day of December, 1994** by and between WATLOW ELECTRIC MANUFACTURING COMPANY, hereinafter called the COMPANY, and MARLOW JORDAHL hereinafter called REPRESENTATIVE, with respect to the sales representation by REPRESENTATIVE, for the products and services of the COMPANY.

In consideration of the execution of this Agreement on the part of both parties hereto, and of the promises and covenants herein made and contained, the COMPANY and REPRESENTATIVE hereby agree as follows:

DUTIES:
REPRESENTATIVE shall exert REPRESENTATIVE'S best efforts to promote the sale of those products of the COMPANY listed in Schedule A below, which Schedule may be from time to time modified or amended by written notice of additions or deletions made by the COMPANY in its sole and absolute discretion, within the territory hereinafter defined. REPRESENTATIVE shall consummate such sales, handle such customer relations and inquiries and execute such contracts in behalf of the COMPANY only as shall be hereafter expressly authorized in writing by the COMPANY. REPRESENTATIVE shall well and faithfully represent the COMPANY and use REPRESENTATIVE'S utmost endeavors to promote its interests. All sales of COMPANY products shall be subject to acceptance by the COMPANY at its headquarters in St. Louis County, Missouri.

TERRITORY:
The only geographical territory in which REPRESENTATIVE is authorized to solicit orders or to offer the said products of the COMPANY for sale is that specified territory ("Territory") in Schedule B below. The COMPANY may, in its sole and absolute discretion, modify or amend this Territory by written notice of additions or deletions at least 30 days prior to the effective date of such modification or amendment.

QUOTATIONS:
REPRESENTATIVE agrees to quote only those prices, warranties and terms of sale, shipment and delivery as are established by the COMPANY. Quotations will be made by the COMPANY for non-standard products or other products or quantities of products not listed on standard price lists by the COMPANY.

COMPENSATION:
REPRESENTATIVE shall receive as sole and total compensation for his services a commission which shall be computed as a percentage, as is specified in Schedule C below, of the net billed amount of shipments made by the COMPANY on sales completed within REPRESENTATIVE'S Territory during the effective period of this Agreement. "Net billed amount of shipments" means the gross billed sales price of merchandise sold and shipped less cash or prompt payment discounts, returns, claims, allowances, special packaging charges, separately billed charges for tooling or engineering services (except Watlow Winona, Inc. engineering charges), sales taxes, freight charges and bad debts. "Sales completed within the Territory" means orders accepted by the COMPANY and actually shipped to the customer if the order was:

**EXHIBIT**

**N**



**Watlow Electric**
**Manufacturing Co.**

12001 Lackland Road
St. Louis, MO 63146
Phone: 314-878-4600
FAX: 314-878-6814

(a)     physically issued from a customer's purchasing office located in the Territory; and

(b)     shipped to a customer destination located in the Territory;  and

(c)     in the COMPANY'S sole and absolute discretion, REPRESENTATIVE participated significantly in the customer's decision to purchase the products which were shipped by making sales and/or engineering contacts with customer personnel within the Territory.

In the event that either (a), (b) or (c) above do not occur within the Territory or in the event that some other sales representative of the COMPANY also significantly participates in the customer's purchase decision, then the total commission percentages shown in Schedule C will be split among the sales representatives of the COMPANY in the following manner:

50%     of the total commission percentage shall be credited to the sales REPRESENTATIVE in whose territory (or territories) the engineering or purchase decision, in the COMPANY'S opinion, was made.  The COMPANY may, in its sole and absolute discretion, allocate this amount among several sales REPRESENTATIVES depending on the COMPANY'S judgement as to the contribution of such REPRESENTATIVES in significantly contributing to the customer's decision to purchase the COMPANY'S product.  If there was no specific engineering decision which was significant, in the COMPANY'S opinion, in ordering specifying COMPANY products, then this credit shall go to or among the sales REPRESENTATIVE(S) in whose territory(ies) the purchase decision was made.

25%     of the total commission percentage shall be credited to the REPRESENTATIVE into whose territory the billing for the order is directed.

25%     of the total commission percentage shall be credited to the REPRESENTATIVE into whose territory the order is shipped.

Commissions are not earned until date of shipment and will be paid by the fifteenth of the month following shipments to customers.  Any adjustments to commissions previously paid, due to returns, claims, allowances, bad debts and the like, will be made by the fifteenth of the month following the credit, adjustment or settlement to or with the customer.

If representation of the COMPANY is terminated by either party, unless representation is terminated for cause, including breach by REPRESENTATIVE of this Agreement, or if territorial or product deletions or additions are made by COMPANY, then REPRESENTATIVE shall receive commission for all firm orders accepted by the COMPANY prior to such termination, deletion, or addition on the basis of the version of the Agreement in effect at the time of the termination, deletion or addition, which are in good faith and in the regular course of business shipped by the COMPANY during the ninety (90) days period following such termination, deletion or addition.

# WATLOW

**Watlow Electric
Manufacturing Co.**

12001 Lackland Road
St. Louis, MO 63146
Phone: 314-878-4600
FAX: 314-878-6814

The total commission percentages and the split or allocation of same indicated above may be modified or amended by the COMPANY at any time in its sole discretion upon thirty (30) days advance notice to REPRESENTATIVE.

## ADVANCE AGAINST COMMISSIONS:

The COMPANY may advance against commissions to be earned by REPRESENTATIVE such amounts from time to time as the COMPANY may determine. Such advances shall be credited against commissions earned by REPRESENTATIVE. If at the time of any termination of this Agreement the amounts advanced by the COMPANY exceed the commissions earned by REPRESENTATIVE, then REPRESENTATIVE shall promptly pay to the COMPANY the amount of such excess.

## OFFICE AND FACILITIES:

REPRESENTATIVE agrees to maintain an office location approved by COMPANY in the Territory, a telephone, a telephone listing in both the White and Yellow Pages for service areas in the Territory in form approved by COMPANY, and such word processing, telefax and other order processing and communication equipment as COMPANY may request from time to time. REPRESENTATIVE shall bear the full expense of the foregoing.

## OBLIGATIONS TO COMPANY:

REPRESENTATIVE agrees that the COMPANY may withhold as a setoff against commissions payable by the COMPANY to REPRESENTATIVE pursuant to this Agreement, any amounts which REPRESENTATIVE may owe to the COMPANY for any reason. REPRESENTATIVE waives any rights against the COMPANY and agrees to hold harmless the COMPANY with respect to any claim arising from such withholding and setoff so long as such action is taken by the COMPANY in good faith.

## ENGINEERING AND SERVICING:

REPRESENTATIVE agrees to provide engineering services through the COMPANY to customers and to service the customer applications of COMPANY products in the Territory.

## AUTHORITY:

REPRESENTATIVE has no authority, express or implied, to receipt for money on behalf of COMPANY, to bind or obligate the COMPANY to any contracts, agreements, or undertakings, verbal or written, or any amendments or alterations of any of the foregoing, except those written contracts or written amendments which have been submitted to and approved by the COMPANY in St. Louis County, Missouri. It is further expressly understood and agreed that at all times herein REPRESENTATIVE shall occupy the position of an independent contractor with respect to the COMPANY in the conduct of REPRESENTATIVE'S affairs and in actions which REPRESENTATIVE may undertake in the discharge of REPRESENTATIVE'S duties under this Agreement and neither party shall exercise control over the activities or methods of operation of the other except as specified within this Agreement.



**Watlow Electric
Manufacturing Co.**

12001 Lackland Road
St. Louis, MO 63146
Phone: 314-878-4600
FAX: 314-878-6814

## COLLECTIONS:

REPRESENTATIVE agrees to protect the COMPANY to the best of REPRESENTATIVE'S ability against loss, and will cooperate in the collection of credit information, delinquent accounts, and so forth, in any manner requested by the COMPANY.

## TRADE SECRETS AND CONFIDENTIAL INFORMATION:

REPRESENTATIVE further acknowledges, recognizes, understands and agrees that the COMPANY possesses trade secrets and certain confidential information in connection with its business. REPRESENTATIVE hereby agrees not to disclose directly or indirectly to any person, organization or company, or to use any of said COMPANY'S trade secrets or confidential information, including but not limited to experimental data, inventions, discoveries, improvements, designs, methods, systems developments, "know-how", ideas, suggestions, devices, processes, and any information of the COMPANY which shall be acquired by, disclosed to, or come to REPRESENTATIVE'S attention or knowledge as a REPRESENTATIVE of COMPANY, except under the express written direction of the COMPANY. Upon the termination of this Agreement by either party hereto, REPRESENTATIVE agrees not to take, retain, or thereafter use, in any way, any designs, drawings, prints, invoices, customer correspondence, customer lists, Application Handbooks, technical letters of the COMPANY, product samples, or confidential data, memoranda or information, or copies thereof, all of which are and shall remain the sole properties of COMPANY, without the express written direction of the COMPANY.

## NON-COMPETITION COVENANT:

REPRESENTATIVE agrees that during the term of this Agreement and for a period of eighteen (18) months after termination of this Agreement, REPRESENTATIVE will not, directly or indirectly, whether as a shareholder, director, officer, employee, agent, representative, partner, proprietor, joint venturer, consultant or otherwise, engage in any business activity in competition with said COMPANY, or handle any similar line of products competing with those manufactured or sold by COMPANY, within the Territory described in this Agreement. For purposes hereof, COMPANY shall include all organizations related to Watlow Electric Manufacturing Company, including but not limited to parent and subsidiary corporations and organizations under common control.

REPRESENTATIVE recognizes and agrees that irreparable injury will result to COMPANY, its business and property in the event of a breach of this covenant not to compete and agrees that in the event of any violation of the covenant not to compete contained herein, that COMPANY shall be entitled, in addition to any other legal or equitable remedy available, to the issuance of restraining orders or injunctions, both temporary and permanent, in order to restrict the violation thereof by REPRESENTATIVE, his partners, agents, representatives, servants, employees and employers, and all persons for or with them. In addition, COMPANY may recover its attorneys' fees in enforcing the covenant not to compete contained herein. In the event that any provision contained in this covenant not to compete is found to be unreasonable by a court, said court may modify the provisions hereof so as to effect the intent of the parties and make them reasonable and enforceable.



**Watlow Electric
Manufacturing Co.**

12001 Lackland Road
St. Louis, MO 63146
Phone: 314-878-4600
FAX: 314-878-6814

## EFFECTIVE PERIOD OF AGREEMENT:

This Agreement shall be for a period of one (1) year commencing **December 1, 1994**, and shall automatically renew itself for similar one (1) year periods thereafter, provided, however, that either party hereto may at any time, during the life of this Agreement, or any extension thereof, cancel and terminate this Agreement by the service of written notice to such effect upon the other party, at least thirty (30) days in advance stating the effective date of termination. For the purposes of this paragraph "written notice" shall be deemed served upon the party by the deposit thereof, first class postage prepaid, in the form of certified mail with return receipt requested, in the U. S. mails, addressed to the last known address of the other party.

## RELATIONSHIP BETWEEN THE PARTIES:

REPRESENTATIVE and the COMPANY acknowledge and agree that REPRESENTATIVE is an independent contractor of the COMPANY and that this Agreement does not establish any employment, partnership or other relationship between the parties. REPRESENTATIVE is not entitled to any pension, welfare or any other benefits available to employees of the COMPANY.

## MISCELLANEOUS:

This instrument and the Schedules below constitute the entire agreement between the parties. No unwritten modifications or amendments hereto shall be effective. This Agreement shall be construed in accordance with the laws of the State of Missouri where it has been accepted on behalf of the COMPANY.

# WATLOW

**Watlow Electric
Manufacturing Co.**

12001 Lackland Road
St. Louis, MO 63146
Phone: 314-878-4600
FAX: 314-878-6814

## SCHEDULE A - PRODUCTS

A)      All products manufactured by Watlow St. Louis, Inc. - St. Louis, Missouri.

B)      All products manufactured by Watlow-Winona, Inc. - Winona, Minnesota.

C)      All products manufactured by Watlow Batavia, Inc. - Batavia, Illinois.

D)      All products manufactured by Watlow-Columbia, Inc. - Columbia, Missouri.

E)      All products manufactured by Watlow Industries, Inc. - Hannibal, Missouri.

F)      All products manufactured by Pacific Heater Company, Inc. - Pacific, Missouri.

G)      All products manufactured by Watlow Infrared Company - Decorah, Iowa

H)      All products manufactured by Watlow Electric Mfg. Co. GmbH, Kronau, West Germany.

I)      All products manufactured by Watlow Process Systems, Inc., Troy, Missouri.

J)      All products manufactured by Watlow AOV, Inc. - Anaheim, California.

## SCHEDULE B - TERRITORY

All counties in Ohio south of and including the counties of Van Wert, Allen, Hardin, Union and Delaware, west of and including the counties of Franklin, Fairfield, Hocking, Vinton, Jackson and Scioto.   All counties in Kentucky EXCEPT those counties west of and including the counties of Union, Crittenden, Caldwell and Trigg.

## SCHEDULE C - TOTAL COMMISSION PERCENTAGES

Products listed in Schedule A, points A, B, C, D, E, G, H, I, and J will return 3.21%.
Product listed in Schedule A, point F will return 1.605%.



**Watlow Electric
Manufacturing Co.**

12001 Lackland Road
St. Louis, MO 63146
Phone: 314-878-4600
FAX: 314-878-6814

   IN WITNESS WHEREOF, the parties have hereunto set their hands as of the date and year first above written.

REPRESENTATIVE:

MARLOW JORDAHL

ADDRESS:

1713 *Nelson Ln*

*Loveland Ohio* 45740

COMPANY:

WATLOW ELECTRIC MFG. COMPANY

By: _Tim Cuiko_

1/11/95