

Watlow Electric
Manufacturing Co.

12001 Lackland Road
St. Louis, MO 63146
Phone: 314-878-4600
FAX: 314-878-6814

This SALES REPRESENTATION AGREEMENT, hereinafter called Agreement, is made and entered into at St. Louis County, Missouri, this 1st day of January, 1996, by and between WATLOW ELECTRIC MANUFACTURING COMPANY, hereinafter called the COMPANY, and **MARLOW JORDAHL** hereinafter called REPRESENTATIVE, with respect to the sales representation by REPRESENTATIVE, for the products and services of each of the COMPANY's manufacturing subsidiaries and divisions referenced in Schedule A, hereinafter referred to as the WATLOW GROUP.

In consideration of the execution of this Agreement on the part of both parties hereto, and of the promises and covenants herein made and contained, the COMPANY and REPRESENTATIVE hereby agree as follows:

DUTIES:
REPRESENTATIVE shall exert REPRESENTATIVE'S best efforts to promote the sale of those products of the WATLOW GROUP listed in Schedule A below, which Schedule may be from time to time modified or amended by written notice of additions or deletions made by the COMPANY in its sole and absolute discretion, within the territory hereinafter defined. REPRESENTATIVE shall consummate such sales, handle such customer relations and inquiries and execute such contracts on behalf of the various members of the WATLOW GROUP only as shall be hereafter expressly authorized in writing by the COMPANY. REPRESENTATIVE shall well and faithfully represent the COMPANY and use REPRESENTATIVE'S utmost endeavors to promote its interests and those of the WATLOW GROUP. All sales of WATLOW GROUP products shall be subject to acceptance by the COMPANY at its headquarters in St. Louis County, Missouri.

TERRITORY:
The only geographical territory in which REPRESENTATIVE is authorized to solicit orders or to offer the said products of the WATLOW GROUP for sale is that specified territory ("Territory") in Schedule B below. The COMPANY may, in its sole and absolute discretion, modify or amend this Territory by written notice of additions or deletions at least 30 days prior to the effective date of such modification or amendment.

QUOTATIONS:
REPRESENTATIVE agrees to quote only those prices, warranties and terms of sale, shipment and delivery as are established by the COMPANY. Quotations will be made by the COMPANY or individual members of the WATLOW GROUP for non-standard products or other products or quantities of products not listed on standard price lists issued by the COMPANY from time to time.

COMPENSATION:
REPRESENTATIVE shall receive as sole and total compensation for his services a commission which shall be computed as a percentage, as is specified in Schedule C below, of the net billed amount of shipments made by a member of the WATLOW GROUP on sales completed within REPRESENTATIVE'S Territory during the effective period of this Agreement. "Net billed amount of shipments" means the gross billed sales price of merchandise sold and shipped less cash or prompt payment discounts, returns, claims, allowances, special packaging

EXHIBIT

**MARLOW JORDAHL**

# WATLOW

**Watlow Electric
Manufacturing Co.**

12001 Lackland Road
St. Louis, MO 63146
Phone: 314-878-4600
FAX: 314-878-6814

charges, separately billed charges for tooling or engineering services (except Watlow Winona, Inc. engineering charges), sales taxes, freight charges and bad debts. "Sales completed within the Territory" means orders accepted by the COMPANY or a member of the WATLOW GROUP and actually shipped to the customer if the order was:

(a)    physically issued from a customer's purchasing office located in the Territory; and

(b)    shipped to a customer destination located in the Territory; and

(c)    in the COMPANY'S sole and absolute discretion, REPRESENTATIVE participated significantly in the customer's decision to purchase the products which were shipped by making sales and/or engineering contacts with customer personnel within the Territory.

In the event that either (a), (b) or (c) above do not occur within the Territory or in the event that some other sales representative of the COMPANY also significantly participates in the customer's purchase decision, then the total commission percentages shown in Schedule C will be split among the sales representatives of the COMPANY using the following guidelines:

50%    of the total commission percentage shall be credited to the sales REPRESENTATIVE in whose territory (or territories) the engineering or purchase decision, in the COMPANY'S opinion, was made. The COMPANY may, in its sole and absolute discretion, allocate this amount among several sales REPRESENTATIVES depending on the COMPANY'S judgment as to the contribution of such REPRESENTATIVES in significantly contributing to the customer's decision to purchase the product(s) of the WATLOW GROUP. If there was no specific engineering decision which was significant, in the COMPANY'S opinion, in ordering or specifying WATLOW GROUP products, then this credit shall go to or among the sales REPRESENTATIVE(S) in whose territory(ies) the purchase decision was made.

25%    of the total commission percentage shall be credited to the REPRESENTATIVE into whose territory the billing for the order is directed.

25%    of the total commission percentage shall be credited to the REPRESENTATIVE into whose territory the order is shipped.

Commissions are not earned until date of shipment and will be paid by the fifteenth of the month following the month during which shipment was made to the customer. The method of payment, whether by check or by Electronic Funds Transfer, will be at the sole discretion of the COMPANY. Any adjustments to commissions previously paid, due to returns, claims, allowances, bad debts and the like, will be made by the fifteenth of the month following the credit, adjustment or settlement to or with the customer.



**Watlow Electric**
**Manufacturing Co.**

12001 Lackland Road
St. Louis, MO 63146
Phone: 314-878-4600
FAX: 314-878-6814

If representation of the COMPANY is terminated by either party, unless representation is terminated for cause, including breach by REPRESENTATIVE of this Agreement, or if territorial or product deletions or additions are made by COMPANY, then REPRESENTATIVE shall receive commission for all firm orders accepted by the COMPANY prior to such termination, deletion, or addition on the basis of the version of the Agreement in effect at the time of the termination, deletion or addition, which are in good faith and in the regular course of business shipped by the COMPANY during the ninety (90) days period following such termination, deletion or addition.

The total commission percentages and the split or allocation of same indicated above may be modified or amended by the COMPANY at any time in its sole discretion upon thirty (30) days advance notice to REPRESENTATIVE.

## ADVANCE AGAINST COMMISSIONS:

The COMPANY may advance against commissions to be earned by REPRESENTATIVE such amounts from time to time as the COMPANY may determine. Such advances shall be credited against commissions earned by REPRESENTATIVE. If at the time of any termination of this Agreement the amounts advanced by the COMPANY exceed the commissions earned by REPRESENTATIVE, then REPRESENTATIVE shall promptly pay to the COMPANY the amount of such excess.

## OFFICE AND FACILITIES:

REPRESENTATIVE agrees to maintain an office location approved by COMPANY in the Territory, a telephone, a telephone listing in both the White and Yellow Pages for service areas in the Territory in form approved by COMPANY, and such word processing, telefax and other order processing and communication equipment as COMPANY may request from time to time. REPRESENTATIVE shall bear the full expense of the foregoing.

## OBLIGATIONS TO COMPANY:

REPRESENTATIVE agrees that the COMPANY may withhold as a setoff against commissions payable by the COMPANY to REPRESENTATIVE pursuant to this Agreement, any amounts which REPRESENTATIVE may owe to the COMPANY for any reason. REPRESENTATIVE waives any rights against the COMPANY and agrees to hold harmless the COMPANY with respect to any claim arising from such withholding and setoff so long as such action is taken by the COMPANY in good faith.

## ENGINEERING AND SERVICING:

REPRESENTATIVE agrees to provide engineering services through the COMPANY or members of the WATLOW GROUP to customers and to service the customer applications of WATLOW GROUP products in the Territory.

## AUTHORITY:

REPRESENTATIVE has no authority, express or implied, to receipt for money on behalf of the COMPANY, to bind or obligate the COMPANY or any member of the WATLOW GROUP to any contracts, agreements, or undertakings, verbal or written, or any amendments or alterations of any of the foregoing, except those written contracts or written amendments which

**WATLOW**

Watlow Electric
Manufacturing Co.

12001 Lackland Road
St. Louis, MO 63146
Phone: 314-878-4600
FAX: 314-878-6814

have been submitted to and approved by the COMPANY in St. Louis County, Missouri. It is further expressly understood and agreed that at all times herein REPRESENTATIVE shall occupy the position of an independent contractor with respect to the COMPANY and the WATLOW GROUP in the conduct of REPRESENTATIVE'S affairs and in actions which REPRESENTATIVE may undertake in the discharge of REPRESENTATIVE'S duties under this Agreement and neither party shall exercise control over the activities or methods of operation of the other except as specified within this Agreement.

COLLECTIONS:
    REPRESENTATIVE agrees to protect the COMPANY and all members of the WATLOW GROUP to the best of REPRESENTATIVE'S ability against loss, and will cooperate in the collection of credit information, delinquent accounts, and so forth, in any manner requested by the COMPANY.

TRADE SECRETS AND CONFIDENTIAL INFORMATION:
    REPRESENTATIVE further acknowledges, recognizes, understands and agrees that the )COMPANY possesses trade secrets and certain confidential information in connection with its business. REPRESENTATIVE hereby agrees not to disclose directly or indirectly to any person, organization or company, or to use any of said COMPANY'S or any of WATLOW GROUP'S trade secrets or confidential information, including but not limited to experimental data, inventions, discoveries, improvements, designs, methods, systems developments, "know-how", ideas, suggestions, devices, processes, and any information of the COMPANY or any member of the WATLOW GROUP which shall be acquired by, disclosed to, or come to REPRESENTATIVE'S attention or knowledge as a REPRESENTATIVE of COMPANY, except under the express written direction of the COMPANY. Upon the termination of this Agreement by either party hereto, REPRESENTATIVE agrees not to take, retain, or thereafter use, in any way, any designs, drawings, prints, invoices, customer correspondence, customer lists, Application Handbooks, technical letters of the COMPANY or any member of the WATLOW GROUP, product samples, or confidential data, memoranda or information, or copies thereof, all of which are and shall remain the sole properties of COMPANY, without the express written direction of the COMPANY.

NON-COMPETITION COVENANT:
    REPRESENTATIVE agrees that during the term of this Agreement and for a period of eighteen (18) months after termination of this Agreement, REPRESENTATIVE will not, directly or indirectly, whether as a shareholder, director, officer, employee, agent, representative, partner, proprietor, joint venture, consultant or otherwise, engage in any business activity in competition with said COMPANY or any member of the WATLOW GROUP, or handle any similar line of products competing with those manufactured or sold by any member of the WATLOW GROUP within the Territory described in this Agreement.

    REPRESENTATIVE recognizes and agrees that irreparable injury will result to COMPANY or members of the WATLOW GROUP, and their respective businesses and property in the event of a breach of this covenant not to compete and agrees that in the event of any violation of the covenant not to compete contained herein, that COMPANY shall be entitled, in addition to any other legal or equitable remedy available, to the issuance of

 **WATLOW**

**Watlow Electric
Manufacturing Co.**

12001 Lackland Road
St. Louis, MO 63146
Phone: 314-878-4600
FAX: 314-878-6814

restraining orders or injunctions, both temporary and permanent, in order to restrict the violation thereof by REPRESENTATIVE, his partners, agents, representatives, servants, employees and employers, and all persons for or with them. In addition, COMPANY and the members of the WATLOW GROUP may recover their attorneys' fees in enforcing the covenant not to compete contained herein. In the event that any provision contained in this covenant not to compete is found to be unreasonable by a court, said court may modify the provisions hereof so as to effect the intent of the parties and make them reasonable and enforceable.

NOTICES OF MODIFICATIONS AND AMENDMENTS
   With regard to those items specified on Schedules A, B or C, whereby the terms of this AGREEMENT grant the COMPANY the right, in its sole and absolute discretion, to modify or amend such provision by written notice of additions, deletions or modifications, such notice (NOTICE OF MODIFICATION) shall be provided not less than thirty (30) days prior to the effective date of such change and shall be in essentially the form attached hereto as Exhibit I. Each NOTICE OF MODIFICATION shall have the full force and effect of an amendment to this AGREEMENT.

EFFECTIVE PERIOD OF AGREEMENT:
   This Agreement shall be for a period of one (1) year commencing January 1, 1996, and shall automatically renew itself for similar one (1) year periods thereafter, provided, however, that either party hereto may at any time, during the life of this Agreement, or any extension thereof, cancel and terminate this Agreement by the service of written notice to such effect upon the other party, at least thirty (30) days in advance stating the effective date of termination. For the purposes of this paragraph "written notice" shall be deemed served upon the party by the deposit thereof, first class postage prepaid, in the form of certified mail with return receipt requested, in the U. S. mails, addressed to the last known address of the other party.

RELATIONSHIP BETWEEN THE PARTIES:
   REPRESENTATIVE and the COMPANY acknowledge and agree that REPRESENTATIVE is an independent contractor of the COMPANY and that this Agreement does not establish any employment, partnership or other relationship between the parties. REPRESENTATIVE is not entitled to any pension, welfare or any other benefits available to employees of the COMPANY.

MISCELLANEOUS:
   This instrument and the Schedules below constitute the entire agreement between the parties. No unwritten modifications or amendments hereto shall be effective. This Agreement shall be construed in accordance with the laws of the State of Missouri where it has been accepted on behalf of the COMPANY.



**WATLOW**

Watlow Electric
Manufacturing Co.

12001 Lackland Road
St. Louis, MO 63146
Phone: 314-878-4600
FAX: 314-878-6614

IN WITNESS WHEREOF, the parties have hereunto set their hands as of the date and year first above written.

REPRESENTATIVE:                              COMPANY:

WATLOW ELECTRIC MANUFACTURING CO.

By _____

SALES ADMINISTRATION SVCS MGR

MARLOW JORDAHL

ADDRESS:

1713 Falcon L

Loveland Ohio

 **WATLOW**

**Watlow Electric
Manufacturing Co.**

12001 Lackland Road
St. Louis, MO 63146
Phone: 314-878-4600
FAX: 314-878-6814

## SCHEDULE A - PRODUCTS

A)   All products manufactured by Watlow St. Louis - St. Louis, Missouri.

B)   All products manufactured by Watlow Controls - Winona, Minnesota.

C)   All products manufactured by Watlow Batavia - Batavia, Illinois.

D)   All products manufactured by Watlow Columbia - Columbia, Missouri.

E)   All products manufactured by Watlow Industries - Hannibal, Missouri.

F)   All products manufactured by Watlow Infrared - Decorah, Iowa.

G)   All products manufactured by Watlow Electric Mfg. Co. GmbH, Kronau, West Germany.

H)   All products manufactured by Watlow Process Systems - Troy, Missouri.

I)   All products manufactured by Watlow AOV - Anaheim, California.

J)   All products manufactured by Watlow Anafaze - Watsonville, California

K)   All products manufactured by Pacific Heater  - Pacific, Missouri.

L)   All products manufactured by Alliance Heater Company - Montgomery City, Missouri.

M)   All bulk wire and cable products (as defined by the COMPANY) manufactured by Watlow Gordon -  Richmond, Illinois

N)   All products manufactured by Watlow Gordon not included in M) above.

## SCHEDULE B - TERRITORY

See the attached zip code sheet(s).

 **WATLOW**

**Watlow Electric
Manufacturing Co.**

12001 Lackland Road
St. Louis, MO 63146
Phone: 314-878-4600
FAX: 314-878-6814

## SCHEDULE C - TOTAL COMMISSION PERCENTAGES

Except as otherwise indicated, products listed in Schedule A, points A through J and N will return 2.410%.

Except as otherwise indicated, products listed in Schedule A, points K through M will return 1.205%.

Any and all products manufactured by a Watlow facility and sold to another Watlow location will return 0% commission.

Any and all products manufactured by any Watlow location, sold to DFAS-Columbus Center, Columbus, OH and shipped to Kaiser Packaging, St. Louis, MO will return 0% commission.

*VOID*

*MB*

| Territory Code | Start Zip | Stop Zip | State |
|---|---|---|---|
| CIN | 40000 | 41099 | KY |
| CIN | 41100 | 41239 | KY |
| CIN | 41240 | 41899 | KY |
| CIN | 42100 | 42210 | KY |
| CIN | 42212 | 42436 | KY |
| CIN | 42437 | 42799 | KY |
| CIN | 43000 | 43007 | OH |
| CIN | 43009 | 43012 | OH |
| CIN | 43014 | 43017 | OH |
| CIN | 43019 | 43022 | OH |
| CIN | 43024 | 43024 | OH |
| CIN | 43026 | 43030 | OH |
| CIN | 43032 | 43032 | OH |
| CIN | 43034 | 43049 | OH |
| CIN | 43051 | 43054 | OH |
| CIN | 43057 | 43061 | OH |
| CIN | 43063 | 43301 | OH |
| CIN | 43303 | 43306 | OH |
| CIN | 43308 | 43313 | OH |
| CIN | 43318 | 43319 | OH |
| CIN | 43324 | 43329 | OH |
| CIN | 43331 | 43331 | OH |
| CIN | 43333 | 43333 | OH |
| CIN | 43336 | 43336 | OH |
| CIN | 43339 | 43340 | OH |
| CIN | 43343 | 43348 | OH |
| CIN | 43352 | 43355 | OH |
| CIN | 43357 | 43358 | OH |
| CIN | 43360 | 43399 | OH |
| CIN | 45000 | 45699 | OH |
| CIN | 45800 | 45812 | OH |
| CIN | 45815 | 45815 | OH |
| CIN | 45817 | 45820 | OH |
| CIN | 45822 | 45826 | OH |
| CIN | 45828 | 45829 | OH |
| CIN | 45832 | 45838 | OH |
| CIN | 45842 | 45843 | OH |
| CIN | 45845 | 45848 | OH |
| CIN | 45850 | 45850 | OH |
| CIN | 45852 | 45854 | OH |
| CIN | 45857 | 45857 | OH |
| CIN | 45859 | 45860 | OH |
| CIN | 45862 | 45866 | OH |
| CIN | 45869 | 45872 | OH |
| CIN | 45874 | 45874 | OH |
| CIN | 45877 | 45878 | OH |
| CIN | 45882 | 45888 | OH |

| Territory Code | Start Zip | Stop Zip | State |
|---|---|---|---|
| CIN | 45891 | 45896 | OH |
| CIN | 45898 | 45899 | OH |

```
Author:   Marlow Jordahl at Watlow-Sales
Date:     3/26/97  5:35 PM
Priority: Normal
   } Nancy Graham at Watlow-Corporate
⌐ubject: Receipt of 3/26/97 3:16 PM message

Re:Contract Revision
```



## EXHIBIT 1

### NOTICE OF MODIFICATION TO SALES REPRESENTATION AGREEMENT
between WATLOW ELECTRIC MANUFACTURING COMPANY ·

and

### MARLOW JORDAHL

Amendment # 1, dated May 1, 1997

You are hereby given notice that the following addition(s), deletion(s) and/or modification(s) to that certain SALES REPRESENTATION AGREEMENT between the aforementioned parties dated January 1, 1996 will be effective as of May 1, 1997.

### SCHEDULE A - PRODUCTS

Additions      _____
Deletions:      _____
Modifications: _____

### SCHEDULE B- TERRITORY

Additions      _____
Deletions:      _____
Modifications: _____

### SCHEDULE C - TOTAL COMMISSION PERCENTAGES

### SCHEDULE D - EXCEPTION ACCOUNTS

Additions:     Any products manufactured by a Watlow facility and sold to a customer designated as a Catalog House (Customer Class 110), will return 0% commission.
Deletions:     _____
Modifications: _____

## EMPLOYMENT AGREEMENT

THIS EMPLOYMENT AGREEMENT is made and entered into as of this 1st day of June, 1997, by and between Watlow Electric Manufacturing Company, a Missouri corporation, and its subsidiary and affiliated companies (hereinafter called "Watlow"), and Marlow Jordahl, (hereinafter called "Employee").

WHEREAS, Watlow is engaged in the business of developing, manufacturing and selling high quality electrical heating products for use in the industrial and commercial market; and

WHEREAS, Watlow is willing to employ, only on the terms, conditions and covenants set forth in this Agreement, and Employee desires employment, by Watlow, only on the terms, conditions and covenants set forth in the Agreement;

NOW, THEREFORE, in consideration of the premises and covenants hereinafter contained, the employment, by Watlow, and other good and valuable consideration, the receipt of which is hereby acknowledged, Watlow and Employee agree and covenant as follows:

1. Employee will be employed by Watlow to perform such sales, marketing, engineering, research, administrative, financial, personnel, production, manufacturing, and information systems duties or services as the management of Watlow may determine from time to time, and Employee hereby accepts such employment with Watlow.

2. Employee agrees to devote his/her full working time and best efforts, skill and attention to the business and interests of Watlow.

3. Watlow shall pay Employee compensation for services rendered in an amount determined by Watlow from time to time. Any changes in Employee's duties or compensation, shall not in any way affect the covenants and promises of Employee as set forth in this Agreement.

4. Watlow and Employee agree that the term of Employee's employment under this Agreement is that of an employee at will and as such, either party may terminate employment herein at any time, with or without cause.

5. It is expressly recognized, acknowledged and agreed by Employee that during the period of employment by Watlow, Employee will be brought into contact with Watlow's confidential methods of operation, information and trade secrets, including, but not limited to, know-how, experimental data, inventions, discoveries, improvements, designs, processes, methods, systems, developments, ideas, suggestions, devices, product costs, products, customer lists, data, documents, prints, drawings, patents, licenses, memoranda, and other information about its operations and business (as presently conducted and as proposed to be conducted) of a confidential nature (hereinafter collectively referred to as "Confidential Information and/or Trade Secrets". Employee agrees not to disclose, during his/her employment or at any time thereafter, or to reveal, directly or indirectly, to any unauthorized person, within or outside of Watlow, or use any of the Confidential Information and/or Trade Secrets of Watlow which shall be acquired by or disclosed to Employee while an employee of Watlow except under the direction of Watlow or with its prior written consent. In addition to the foregoing, if Employee's employment shall terminate, for any reason, Employee will not take with him/her any Confidential Information and/or Trade Secrets without first obtaining Watlow's written consent. The terms "Confidential Information" and/or "Trade Secrets" do not include information which (i) is or becomes generally available to the public, (ii) was within the employee's possession prior to its being furnished to employee pursuant hereto except as protected under prior agreements with Watlow, or (iii) becomes available to employee on a non-confidential basis other than in the course of Employee's employment.

6. Employee promises and agrees that he/she will disclose fully and reveal promptly to Watlow any and all inventions, discoveries, designs, improvements, ideas, and the like (hereinafter collectively referred to as "inventions"), whether patentable or not, and whether conceived by employee, solely or in conjunction with other persons, at any time during his/her employment by Watlow, and for a period of one (1) year thereafter where such discoveries (i) relate to the business of Watlow, or (ii) were developed at Watlow's expense or on its premises, or (iii) resulted directly or indirectly from such employment by Watlow, or (iv) related to articles or products made, sold, used or bought by Watlow, or (v) were being considered for design, development, sale, purchase or use by Watlow during such employment by Watlow. All such inventions and rights associated therewith shall be the sole and exclusive property of Watlow.

Employee agrees to promptly execute any documents that may be necessary to vest title in Watlow to any such inventions and any patents which may be applied for or issued covering the same, in all countries, without additional cost to Watlow. However, Watlow shall reimburse Employee for all out-of-pocket expenses incurred in connection with the execution of any documents necessary to vest title in Watlow. Employee further agrees to turn over to Watlow any Confidential Information and/or Trade Secrets, memoranda, schematics, drawings and data accumulated or made in connection with any of the foregoing.

7. During the period of Employee's employment with Watlow and for a period of one (1) year after the date of termination of such employment for any reason, Employee agrees that he/she will not directly or indirectly, within the territory served by Watlow at any time during the one (1) year period preceding termination of employment, engage in any business or conduct in competition with Watlow whether as an owner, partner, joint venturer, consultant, stockholder, lender, employee, agent, sales person, officer, director, or in any other capacity, provided however, employee may own stock of not more than 5% in any publicly traded company that is in competition with Watlow.

(over)



EXHIBIT

P

ALLSTATE INTERNATIONAL


8. In the event Employee breaches any of the covenants and promises contained in this Agreement, Employee acknowledges that in addition to any remedies that Watlow may have at law, Watlow shall be entitled to seek injunctive relief to enforce the covenants and promises of Employee as set forth in this Agreement. Further, in the event of a breach of this Agreement by Employee, Employee agrees that he/she will reimburse Watlow for all of its costs, expenses and reasonable attorney's fees incurred in enforcing this Agreement.

9. Employee acknowledges that the covenants and promises set forth in this Agreement are reasonable and necessary for the protection of Watlow's business interests. Employee acknowledges that Employee's experience and capabilities are such that in the event of the termination of Employee's employment with Watlow, for any reason, Employee can engage in other gainful employment activities and earn a living in a manner not violative of this Agreement.

10. The parties agree that in the event that any provision(s) of this Agreement shall be found invalid or unenforceable for any reason by a court having full and final jurisdiction, then such provisions shall be modified to such extent possible by such court so as to give effect to the intent of the parties. Notwithstanding the preceding sentence, the validity, legality or enforceability of the remaining provisions of this Agreement and any other application thereof shall not in any way be affected or impaired thereby.

11. The word "territory served by Watlow" as used herein shall include territories served by Watlow and territories served by corporations or other business organizations wholly owned by, controlled by or affiliated with Watlow. As of the date hereof, the territory served by Watlow includes the continental United States.

12. The parties acknowledge that this document contains the entire agreement between the parties and that there are no representations, inducements, arrangements, promises, or agreements outstanding between them, either oral or in writing, other than those herein contained. Any and all prior employment agreements that Employee may have had from time to time with Watlow are hereby superseded by this Agreement. No provision of this Agreement shall be changed or modified except by written instrument executed by the parties hereto.

13. No waiver by Watlow of any breach of this Agreement by Employee shall constitute a waiver of any subsequent breach by Employee.

14. This Agreement shall be construed in accordance with the laws of the State of Missouri.

15. The provisions of this Agreement shall inure to the benefit of and shall be binding upon the successors and assigns of Watlow.

16. All notices required herein shall be sent by registered or certified U.S. mail, return-receipt requested and directed as follows:

17. Notwithstanding anything in this Employment Agreement to the contrary, the terms and provisions of that certain Consulting Agreement dated April 24, 1997, by and among Paul Sullivan, Paul Taylor, Bill Moser, Tom Koehler and Troy Seppelt (current Watlow Representatives) and Marlow Jordahl, as a consultant, shall not at any time be deemed a violation of any of the provisions hereof.

If to Watlow:     Watlow Electric Manufacturing Company
                  12001 Lackland Road
                  St. Louis, Missouri 63146
                  Attention: Corporate Human Resources Department

If to Employee:   _Marlow Jordahl_

                  _1713 Falcon Ln Loveland CO_
                  or most recent address on file at Watlow.

IN WITNESS WHEREOF, the parties have entered into this Agreement as of the day and year first above written.

WATLOW ELECTRIC MANUFACTURING COMPANY

By: _William F. Ott Jr._

Title: _Director, Corporate Marketing_

_____
Witness

_____
Witness

_____
Employee Signature

# EMPLOYMENT AGREEMENT

THIS AGREEMENT entered into as of _July 19, 2001_ is between **Marlow Jordahl and Watlow Electric Manufacturing Company.** The terms of this Agreement apply regardless of whether you work for Watlow Electric Manufacturing Company in its corporate offices in St. Louis or any of the subsidiary, parent or affiliated companies that are part of the Watlow Group. For convenience, and unless otherwise stated in this Agreement, we will refer to all of the Watlow Companies as "Watlow" or the "Company(ies)" in this Agreement.

The purpose of this Agreement is to state in writing, our obligations to each other during your employment as well as your obligations to Watlow after you leave employment for any reason. You have advised Watlow that you are under no legal or contractual obligations such as a non-compete clause, that would prohibit you from entering into this Agreement. This Agreement replaces any earlier agreements or understandings between us.

1. Watlow is willing to employ or continue to employ you under the terms and conditions of this Agreement. As a Watlow employee, you are expected to devote your full working time and best efforts, skill and attention to Watlow's business interests. Your duties at Watlow will be those assigned to you by the Company. You agree that Watlow reserves the right to change your job duties from time to time and may transfer you to one of its affiliated Companies if Watlow believes that would be in the best interests of its business. You agree that the promises made in this Agreement will not change because Watlow changes your job duties, job location or compensation.

2. Watlow will compensate you for your services in an amount it decides upon. Watlow may change your compensation from time to time, and reserves the right to do so. Watlow shall provide you with an additional day of vacation to use as you wish or to use to volunteer for community service as additional consideration for entering into this Agreement if you are already an employee of the Company.

3. Both you and Watlow have the right to terminate the employment relationship at any time and for any reason. Regardless of the reason or cause of the termination, however, you agree to abide by the terms of this Agreement as they apply to your post employment conduct.

4. Your position with Watlow is one in which you are entrusted with confidential and proprietary information and Watlow Trade Secrets. As a condition of employment, you agree not to disclose to anyone outside Watlow, any of this information or use it for your own personal benefit, either during your employment with Watlow or thereafter. Basically, this sensitive information is that concerning Watlow's business operations and plans, its inventions and patents, its trade secrets, its customers, financing, services or products that are not generally known in the industry. If you have any question as to whether something is confidential or proprietary information, or a trade secret, you agree to ask Watlow and obtain prior written approval before use or disclosure of that information. If we have a dispute as to whether certain information is covered by this paragraph, Watlow has the right to make the final determination.

At the end of your employment with Watlow, you agree to return the originals and copies of all Company information, including information covered by this paragraph, information stored on a



1

computer, any notes or summaries you may have of Watlow information and any other information that is from Watlow or was obtained by you as a result of your employment with the Company.

5. You agree that during your employment with Watlow and for one (1) year after the end of your employment, you will fully and promptly disclose to Watlow any inventions, discoveries, designs, improvements, ideas, and similar items (collectively referred to as "Inventions") if you obtained knowledge of these items under the following circumstances:

The Invention was conceived by you, either alone or in conjunction with other persons during your employment by Watlow and for a period of one (1) year thereafter; and

a. The Invention relates to any portion of the business of Watlow that you were exposed to or had contact with during your employment; or

b. The Invention was developed at Watlow's expense or on its premises; or

c. The Invention resulted directly or indirectly from your employment; or

d. The Invention relates to products that are currently designed, manufactured, assembled, sold, used or bought by Watlow or were being considered for such use by Watlow during your employment.

You agree that any Inventions that are covered by this paragraph, as well as any rights associated with the Inventions, are the sole and exclusive property of Watlow. You also agree to promptly execute any documents that may be necessary to vest title in Watlow to any such Inventions and any patents which may be applied for or issued covering the same, in Watlow, in all countries. Watlow agrees to reimburse you for any out-of-pocket expenses you personally incur in connection with the execution of any documents necessary to vest title to the Invention in Watlow. Both of us agree that any Invention covered by this paragraph is confidential and proprietary information that is also covered by paragraph 4 of this Agreement.

6. You agree that it is necessary to Watlow's business to impose certain restrictions on competition by its former employees and that your experience and capabilities are such that you will be able to abide by these restrictions and still be able to engage in gainful employment after you leave Watlow. You agree not to engage in any of the following activities either by yourself or through a third party such as a new employer, during your employment and for a period of eighteen (18) months after you leave Watlow's employment:

a. Engage in any business or conduct that is in competition with Watlow. The phrase "competition with" means the offering for sale or lease of any product or service that is the same or similar to that offered by Watlow, as well as any product or service which can reasonably be used as a substitute for a product or service offered by Watlow.

b. Solicit or service any of Watlow's customers, or prospective customers who have been solicited or serviced by Watlow within the twelve (12) months prior to the end of your employment;

c. Solicit, induce or otherwise cause any employee of Watlow to terminate employment with Watlow in order to become an employee, consultant or independent contractor to or for you or any other person or entity.

Your obligation to Watlow under subpart a. above is limited to those portions of Watlow's business that you were in business contact with during all or a part of the last two (2) years of your employment, and further limited to the geographic area of the Company for which you had job responsibilities during all or a part of the last two (2) years of your employment. Your obligations regarding customers and prospective customers under subpart b. above, is limited to those customers or prospective customers with which you had business contact during your employment at Watlow or, for whatever reason, had exposure to confidential information relating to that customer or prospective customer. Your obligations concerning other Watlow employees in subpart c. above, is limited to those employees with which you had business contact during your employment with the Company.

If you have any questions as to whether you are in violation of this paragraph, you agree to ask Watlow and obtain prior written approval from the Company prior to engaging in any proposed business activity.

7. You agree that in the event you do not comply with the obligations stated in this Agreement, Watlow is entitled to obtain an injunction against you to prevent any further violation and to obtain damages (including costs and reasonable attorney fees) that Watlow incurs as a result of enforcing this Agreement. The duration of injunctive relief shall be the time from the date such relief is granted, but reduced by the time expired between the date the period of restriction began to run and the date of your first violation.

## GENERAL PROVISIONS

1. "Trade Secrets" includes all trade secrets covered by the Uniform Trade Secrets Act adopted in Missouri.

2. If part of this Agreement is found to be invalid or unenforceable, we agree that the Court making that determination should modify this Agreement so that it is enforceable.

3. If we mutually decide to modify this Agreement, it must be in writing and signed by both of us.

4. If you violate this Agreement and Watlow decides not to enforce the Agreement despite your violation, you agree that Watlow still reserves the right to enforce this Agreement for any later violation by you.

5. Missouri law will apply to this Agreement.

6. This Agreement shall apply to any successors or assigns of Watlow as if it had entered into the original Agreement.

7. All notices regarding this Agreement shall be sent by certified U.S. mail, return-receipt requested and directed as follows:

If to Watlow:    *Watlow Electric Manufacturing Company*
                 *12001 Lackland Road*
                 *St. Louis, Missouri 63146*

Attention: *Corporate* Human Resources Department

If to Employee:    _____
                   _____
                   _____
                   or most recent address on file at Watlow

The parties have entered into this Agreement as of the date that all parties have signed.

WATLOW

By _____
Title _____

_____
Witness

_____
Employee Signature

# CONSULTING AGREEMENT

THIS CONSULTING AGREEMENT ("Agreement") is made and entered into this ___ day of September, 1998, and shall be effective as of October 1, 1998 (Effective Date), by and among TROY SEPPELT, PAUL SULLIVAN, PAUL TAYLOR, and GLENN VINSON, jointly and severally (hereinafter referred to collectively as the "Watlow Representatives" and individually as a "Watlow Representative") and MARLOW JORDAHL ("Consultant").

## WITNESSETH:

WHEREAS, for the last twenty (20) years, Consultant has been an independent sales representative for Watlow Electric Manufacturing Company ("Watlow") promoting the sales of certain Watlow products, primarily in Ohio and Kentucky; and

WHEREAS, the Watlow Representatives are also independent sales representatives for Watlow and, together with Consultant, have been conducting such business and operations out of the Marlow Jordahl Company office located at 4700 Duke Drive, Suite 125, Mason, Ohio 45040 ("Business"); and

WHEREAS, Consultant has decided to retire from the Business, thereby ending his sales representative relationship with Watlow, and desires to pursue a separate relationship with Watlow as an employee; and

WHEREAS, in connection with such retirement, Consultant will assign over to the Watlow Representatives (any one of them), or such other entity as they shall direct, Consultant's interests in all of the tangible assets relating to the Business, including without limitation, any operating leases relating to the operations of the Business as the parties shall mutually agree; and

WHEREAS, Consultant has extensive business contacts and experience which will assist the Watlow Representatives in developing and promoting the Business and in generating sales of the Watlow products; and

WHEREAS, the Watlow Representatives desire to gain the benefit of Consultant's experience and to contract for the services of Consultant in the Business and to assist the Watlow Representatives in selling and marketing Watlow's products and services, and Consultant desires to contract with the Watlow Representatives as a consultant on this basis.

NOW, THEREFORE, in consideration of the foregoing and the mutual promises, covenants and conditions set forth herein, each of the Watlow Representatives and Consultant agree as follows:

EXHIBIT

R

ALL-STATE® INTERNATIONAL

Section 1.     Engagement of Consultant. The Watlow Representatives hereby retain Consultant and Consultant hereby agrees to render sales, marketing and consulting services as provided herein to the Watlow Representatives related to the Business in the development, sales and marketing of Watlow products relative to the food service market and to render such other services to the Watlow Representatives as the Watlow Representatives and the Consultant may mutually agree. Consultant agrees to make himself generally available (whether by phone, in person or by such other mutually agreeable manner) for the rendering of such services, all on a mutually agreeable time frame.

Section 2.     Duties of Consultant. During the term of this Agreement, Consultant shall perform services as specified herein and as the Watlow Representatives and Consultant may reasonably deem appropriate and helpful to the Watlow Representatives in their development and operation of the Business, including the following:

a)  Consultant shall consult with and advise the Watlow Representatives with respect to the Business, developing, servicing, sales and marketing of Watlow products specific to the food service market; and

b)  Consultant shall assist the Watlow Representatives with respect to design, development, servicing, sales, marketing and other technical issues for the development of the Business relative to the food service market; and

c)  The Watlow Representatives acknowledge that Consultant's efforts are not exclusively directed toward the Business, and the time committed by Consultant to perform duties hereunder shall be mutually agreed upon by the parties. The Watlow Representatives will provide Consultant with reasonable notice prior to the requested performance of services by Consultant.

The Watlow Representatives agree that they will act in good faith and cooperate with Consultant in the performance of his duties hereunder, including without limitation, the promotion of the goodwill of the Business. Similarly, Consultant agrees that he will act in good faith and cooperate with the Watlow Representatives in the performance of his duties hereunder, including without limitation, the promotion of the goodwill of the Business.

Section 3.     Non-Exclusivity. The parties agree and acknowledge that Consultant will be entering into an employment relationship with Watlow. Nothing contained in this Agreement shall be construed as a prohibition against Consultant being employed in any capacity with Watlow or being engaged in any other related or unrelated activities.

Section 4.    Term; Termination.  The term of this agreement shall begin on the Effective Date and shall continue through May 31, 2002.  Notwithstanding the foregoing, this Agreement shall terminate and all obligations of the Watlow Representatives to pay the Consulting Fee due hereunder shall cease:

    a)  ninety (90) days after the termination of Consultant's employment relationship with Watlow for any reason;

    b)  upon the termination of each of the Watlow Representative's relationship with Watlow;

    c)  payment in full of all Consulting Fees payable by the Watlow Representatives in the amount of Three Hundred Sixty-Six Thousand, Six Hundred Ninety-Six and 00/100 Dollars ($366,696.00); or

    d)  upon the death of the Consultant

Section 5.    Compensation.

    a)  For all services rendered by Consultant under this Agreement, the Watlow Representatives shall pay Consultant an annual fee equal to One Hundred Thousand and 00/100 Dollars ($100,000.00) payable in monthly installments beginning November 15th, 1998, equal to Eight Thousand Three Hundred Thirty-Four and 00/100 Dollars ($8,334.00) (Consulting Fee).  Such Consulting Fee shall be paid only out of the commission percentages earned by the Watlow Representative and payable by Watlow to the Watlow Representatives in accordance with the Watlow Sales Representation Agreement existing between each Watlow Representative and Watlow.  Pursuant to the Commission Assignment in the form of Exhibit A attached hereto, the Watlow Representatives have assigned to Consultant (and authorized Watlow to deduct and pay to Consultant) commissions earned by the Watlow Representatives to pay the Consulting Fee hereunder;

    b)  In the event the amount of commissions earned by the Watlow Representatives in any given month are less than the monthly Consulting Fee payable hereunder, the Watlow Representatives agree that commissions earned in future months by them may be applied to the payment of any past due Consulting Fees due Consultant hereunder;

    c)  In the event Consultant, in his capacity as an employee of Watlow, receives payment of a base salary in excess of Seventy-Five Thousand and 00/100 Dollars ($75,000.00) ("Base Amount") in any given Fiscal Year (for purposes hereof, defined as the twelve (12) month period beginning each June 1 and ending each May 31), the Consulting Fee payable hereunder shall be reduced by an amount equal to the difference between the Base Amount and Consultant's base salary for such Fiscal Year.  At the end of each Fiscal Year, Consultant shall cause Watlow to provide the Watlow Representatives with a written statement setting forth his base salary for such Fiscal Year, and any

adjustments to be made to the Consulting Fee payable hereunder shall be determined as of such time;

d) The Watlow Representatives shall, upon prior written notice to Consultant, have the option to prepay any portion of the Consulting Fees payable hereunder in an amount equal to the present value of the outstanding balance of all remaining Consulting Fees payable hereunder calculated using a six percent (6%) interest rate; provided, that the amount of such prepayment shall be applied in the inverse order of maturity to the remaining payments of the Consulting Fee payable during the term, hereof; and

e) Consultant acknowledges that the Watlow Representatives intend to provide Consultant with a Form 1099 each year for payments of Consulting Fee hereunder. Consultant will be responsible for the payment of all taxes due in connection with the Consulting Fees paid hereunder.

Section 6.     Change in Circumstances.

a) The parties hereto agree and acknowledge that changes in personnel may occur with the Watlow Representatives in the Trading Area (as defined below) which could include a decrease in the number of Watlow Representatives or the addition of persons serving as independent sales representatives for Watlow in the Trading Area. The parties further agree that provided the profitability of the Trading Area remains the same or better than that currently achieved by the Watlow Representatives, any such change in personnel shall not affect the obligation of the Watlow Representatives to make payment of the Consulting Fees payable hereunder. For purposes hereof, "Trading Area" shall mean all counties in Ohio south of and including the counties of Van Wert, Allen, Hardin, Union and Delaware, west of and including the counties of Franklin, Hocking, Vinton, Jackson and Scioto and all counties in Kentucky except those counties west of and including the counties of Union, Crittenden, Caldwell and Trigg, and shall also include any increase in such Trading Area.

b) If (i) any change occurs in the independent contractor status of the Watlow Representatives, or (ii) the commission percentages for the Trading Area are reduced to a percentage below that existing on the date of the signing of this Agreement and such reduction results in reduced profitability for the Trading Area, this Agreement will continue, however, the terms hereof may be renegotiated at such time by the parties and adjustments which are equitable, proportional and fair to all of the parties shall be made.

Section 7.     Confidential Nature of Relationship.  Except as may be required by governmental law or regulation or as necessary in connection with the operations of the

Business in the Trading Area, during the term of this Agreement, each of the Watlow Representatives and Consultant agree to keep confidential and not divulge to any person any of the terms and conditions of this Agreement and the consulting relationship among the Watlow Representatives and Consultant. If disclosure to any person(s) is necessary in connection with the operations of the Business in the Trading Area, the Watlow Representatives agree to make such person(s) aware of the terms of this Section 7 and the obligation to keep confidential the terms hereof.

Section 8.    Survival. The obligations contained in Section 7 shall survive the termination of this Agreement. In addition, the termination of this Agreement shall not affect any of the rights or obligations of any party arising prior to or at the time of the termination of this Agreement.

Section 9.    Miscellaneous.

a) Governing Law. This Agreement is made under and shall be governed by and construed in accordance with the laws of the State of Ohio.

b) Entire Agreement. This Agreement contains the entire understanding between the parties and supersedes all prior written agreements and oral understandings between them regarding the subject matter of this Agreement. There are no representations, agreements, arrangements or understandings, oral or written, between or among the parties to this Agreement relating to the subject matter of this Agreement that are not fully expressed in this Agreement.

c) Severability. This Agreement is intended to be performed in accordance with and only to the extent permitted by all applicable law, ordinances, rules and regulations. If any clause, phrase or provision of this Agreement or its application to any person or circumstance is, for any reason and to any extent, invalid or unenforceable, the remainder of this Agreement and the application of such clause, phrase or provision to other persons or circumstances shall not be affected by it, but rather shall be enforced to the greatest extent permitted by law.

d) Non-Assignment. This Agreement is personal to each of the parties hereto and shall not be assigned by any of them. Except in connection with any change in the Watlow Representatives or other person(s) acting as representatives in the Trading Area, each of the Watlow Representatives and Consultant shall not hypothecate, delegate, encumber, alienate, transfer or otherwise dispose of any of his respective rights or duties hereunder.

e) Headings. The section and paragraph headings used herein are for convenience only and do not define, limit or construe the contents of such sections and paragraphs.

f) Amendment. This agreement may be amended in any manner by an agreement, in writing, signed by each of the parties hereto.

PERSONNEL OF MJI

In accordance with the Consulting Agreement between the Watlow Representatives and Marlow Jordahl a change in ~~circumstances among~~ the Watlow Representatives has occurred. By signing of this document, all parties acknowledge that Bill Moser and Tom Koehler are no longer part of the Watlow Representatives as described in the agreement. Furthermore, effective October 1st, 1998, Glenn Vinson is to be included under the Watlow Representatives heading as described in the Consulting Agreement.

The undersigned understand and agree to the change in circumstances as described above:

WATLOW REPRESENTATIVES:                      CONSULTANT:

_Troy Seppelt_   9/15/98              _Marlow Jordahl_

TROY SEPPELT                                 MARLOW JORDAHL

_Paul Sullivan_  9/15/98

PAUL SULLIVAN

_Paul Taylor_  9/15/98

PAUL TAYLOR

_Glen Vin_  9/15/98

GLENN VINSON