IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
CINCINNATI DIVISION

| | | |
|---|---|---|
| MARLOW JORDAHL | : | CASE NO. C-1-01-862 |
| | | Judge Dlott |
| Plaintiff | : | |
| vs. | : | |
| | | **PLAINTIFF'S RESPONSE** |
| WATLOW ELECTRIC MANUFACTURING | : | **TO MOTION FOR** |
| COMPANY | | **SUMMARY JUDGMENT** |
| | : | |
| Defendant | | |
| | : | |

Plaintiff Marlow Jordahl, through his attorneys Edward S. Dorsey, William J. Liss, and Lindhorst & Dreidame Co. LPA, responds to Defendant Watlow's motion for summary judgment as follows:

## I.   FACTS

This is an action for the value of pension benefits lost by Plaintiff Jordahl ("Jordahl") as a result of Watlow's misclassification of Jordahl as an independent contractor, instead of as an employee, from 1974 to June 1997.  It is undisputed that in September 1973, Watlow hired Jordahl as an employee (not an independent contractor) at its facilities in St. Louis (Marlow Jordahl Depo. Tr. Vol. 1 ("Jordahl Tr.") p. 82:14-18).  In April 1974, Watlow moved Jordahl from St. Louis to Cincinnati to run its sales office here (Jordahl Tr. p. 29:1-17; p. 33:14-17).  Jordahl continued in this position until June 1997, at which time his title and duties were changed such that it is undisputed that he was again an employee of Watlow, and not an independent contractor.  (Jordahl Tr. p. 31:2-4; p. 82:9-18).

Upon making the move to Cincinnati from St. Louis in 1974, Jordahl signed a Sales Representation Agreement (See Exhibit 2, Exhibit A, to Defendant's Motion for Summary Judgment ("Defendant's Motion")). He also signed several subsequent Sales Representation Agreements between 1974 and 1997 (See Exhibit 2, Exhibits A-Q, to Defendant's Motion). These Sales Representation Agreements all indicated that Jordahl was an independent contractor. Prior to 1990, however, none of those Sales Representation Agreements said anything about Jordahl's eligibility for pension benefits. (See Exhibit 2, Exhibits A-F to Defendant's Motion).

Despite the "independent contractor" designation in the Sales Representation Agreements, Jordahl was treated in virtually all respects as if he were an employee. Thus, Watlow provided him with health insurance benefits, something typically reserved for employees. (See Admission No. 6 to Defendants' Responses to Plaintiff's Combined Interrogatories, Requests for Admission and Requests for Production ("Defendant's Responses"); a true and correct copy of which is attached hereto as Exhibit A). Watlow required that Jordahl represent Watlow exclusively, i.e., he was not allowed to, nor did he, represent any other companies in his sales efforts (Admission No. 1 to Defendant's Responses; Jordahl Tr. p. 57:14-23). Watlow paid all expenses incurred by Jordahl in his efforts to make sales, including office rent, secretarial salaries, travel expenses, entertainment expenses, the cost of office equipment and supplies, and the like (Jordahl Tr. pp. 211:3-6; 309:7-21; Bohnenkamp Deposition Transcript Vol. I ("Bohnenkamp Tr.") pp. 141-144). Jordahl operated

under the name "Watlow Electric" or variants such as "Watlow/Cincinnati," using these names on stationary and business cards (Jordahl Tr. Vol. 2 pp. 448:2-18). Office space was leased in the name "Watlow Electric," and Jordahl represented himself to customers as the "District Manager" of Watlow Electric (See Lease Amendment attached hereto and incorporated herein as Exhibit B; Jordahl Tr. p. 29:15-17). Other sales representatives employed out of the Cincinnati office were hired with the express knowledge and consent of Watlow in St. Louis (Jordahl Tr. p. 223:2-24). Indeed, such sales representatives had contracts directly with Watlow (Jordahl Tr. pp. 213-214). Watlow provided Jordahl with substantial training, and required him to file regular reports of his sales activities, in addition to forecasts of anticipated future sales (Jordahl Tr. pp. 11-14; 49:6-11; Bohnenkamp Tr. p. 46:10-15; Admission No. 16 to Defendant's Responses). All of these facts show that Jordahl was actually an employee and not an independent contractor, and that Watlow had classified him as an independent contractor to improperly avoid paying payroll taxes and pension contributions.[1]

From June 1997 until October 23, 2001, it is undisputed that Jordahl was once again an employee, not an independent contractor, of Watlow (Jordahl Tr. p. 31:2-4; p. 82:9-18). During this period, Jordahl worked out of his home in the Cincinnati area. On October 23, 2001, Watlow terminated Jordahl's employment (Jordahl Tr. pp. 123:14-20). On that date, it gave Jordahl a letter indicating that

---

[1] Steve Bohnenkamp, who testified as a Rule 30(b)(6) witness for Watlow, would not reveal how much money Watlow had saved over the years in payroll taxes and pension contributions by classifying its sales representatives as independent contractors, even though Watlow had calculated the amount. (Bohnenkamp Tr. p. 195:3-23). Needless to say, this amount, accumulated over dozens of sales representatives and over 20 years, is clearly in the millions of dollars.

because he had less than five years of vesting service, he was not eligible for pension (See Watlow correspondence dated October 23, 2001 attached hereto and incorporated herein as Exhibit C). On November 20, 2001, Watlow reversed this position, giving Jordahl notice that his admitted service as an employee in 1973 and 1974, plus his service as an employee from June 1997 to October 2001, was sufficient to vest him with pension benefits (See Watlow correspondence dated November 20, 2001 attached hereto and incorporated herein as Exhibit D). This notice further indicated that Jordahl will become eligible to receive pension benefits beginning August 1, 2007. Finally, the notice implicitly indicated that Watlow refused to credit Jordahl for pension benefit purposes for his service between 1974 and June 1997. The estimated difference in the value of Jordahl's pension benefits as a result of his not getting credit for his service between 1974 and June 1997(based on the cost of an annuity to replace the additional pension benefits) is $500,000.

## II. Jordahl's Claim Accrued on November 20, 2001, When He Was Notified As To His Vested Pension Benefits by Watlow.

Watlow correctly indicates that ERISA does not contain a statute of limitations on an action to recover the value of pension benefits, and that the most analogous state statute of limitations therefore applies to Jordahl's claim. In Ohio, this statute of limitations is the 15 year statute for breach of a written contract contained in R.C. §2305.06. *Meade v. Pension Appeals and Review Comm.*, 996 F.2d 190, 193-94 (C.A. 6 1992).[2] Watlow also correctly indicates

---

[2] Contrary to Watlow's suggestion, it is Ohio law, not Missouri law, that controls the statute of limitations because Ohio is where the claim for benefits arose. *Wetzel v. Lou Ehlers Cadillac Group*, 222 F.3d 643, 646-47 (C.A.9 2000).

that the date of accrual of an ERISA claim (i.e., the date the statute of limitations begins to run) is governed by federal, not state, law.

The Sixth Circuit has held that "an ERISA cause of action for benefits under ERISA does not arise until a claim for benefits has been made and formally denied." *Stevens v. Employer-Teamster Joint Council No. 84 Pension Fund*, 979 F.2d 444, 451 (C.A.6 1992). Accord: *Allen v. Unionmutual Stock Life Insurance Co.*, 989 F. Supp. 961, 964 (S.D. Ohio) ("An ERISA cause of action for benefits accrues, and the statute of limitations or contractual limitations period begins to run, when a benefit claim has been made and formally denied"); *Haynes v. O'Connell*, 599 F. Supp. 59, 62 (E.D. Tenn. 1984).

Under this rule, Jordahl's claim accrued on November 20, 2001, when Watlow formally described for Jordahl the extent of his vested pension benefits. (See, Exhibit C). At that point in time, Jordahl's relationship with Watlow was at an end, and he would therefore not likely be accruing any additional pension benefits. The November 20, 2001, communication put Jordahl on clear notice as to the extent of his benefits. Such benefits were clearly uncertain prior to this date. Watlow itself did not even know whether Jordahl was vested in any pension benefits, as indicated by Watlow's October 23, 2001, letter indicating that Jordahl had accrued <u>no</u> pension benefits. In these circumstances, Jordahl's December 12, 2001, suit – less than a month after he had been informed of the level of his vested benefits – was unquestionably timely.

### III.    Watlow's Contention – that the Statute of Limitations began to Run in 1974 – Does Not Withstand Scrutiny.

Watlow contends that Jordahl's claim accrued in 1974 when Jordahl first signed a Sales Representation Agreement that indicated he was an independent contractor. This argument simply makes no sense, and is inconsistent with Sixth Circuit and other case law.

At the outset, it is important to note that Watlow cites to no Sixth Circuit decisions in support of its contention. Indeed, Watlow does not even cite to any District Court decisions within the Sixth Circuit. Most of the decisions it cites are from the Eighth Circuit. Although Watlow's headquarters are in St. Louis within the Eighth Circuit, these decisions are not binding in this Court, particularly since Jordahl's claim for benefits arose based on his service for Watlow within the territorial limits of the Sixth Circuit.

Moreover, Watlow erroneously contends that "every" Court that has considered the contention it raises here – that the signing of a contract improperly classifying an individual as an independent contractor starts the running of the statute of limitations with regard to pension claims – has endorsed that contention. The United States District Court for the Eastern District of Pennsylvania ruled otherwise in *Godshall v. Franklin Mint Co.*, 285 F. Supp. 2d 628, 630, 636 (E.D. Pa. 2003). In that case, the plaintiffs signed independent contractor agreements with specific knowledge that fringe benefits were available only to employees, and not to independent contractors. The defendant moved for summary judgment on the statute of limitations. The Court denied summary judgment, concluding that there was insufficient evidence that the plaintiffs were

aware of their right to assert an ERISA claim at the time they signed the independent contractor agreements.

Despite Watlow's failure to cite Sixth Circuit case law to support its argument, there are Sixth Circuit decisions that could be argued to support Watlow's statute of limitations contention. In cases based on ERISA and other federal statutes, the Sixth Circuit has indicated that a discovery rule may be used with respect to determining when statutes of limitations begin to run. In general, the discovery rule provides that the statute of limitations begins to run when the plaintiff knew, or should have known, of his injury. *Michigan United Food and Commercial Worker Unions v. Mercantile Employees Join Health and Welfare Fund*, 992 F.2d 594, 587-98 (C.A. 6, 1993); *Turner v. Retirement Plan of Marathon Oil Co.*, 659 F. Supp. 534, 539 (N.D. Ohio, 1987) ("the limitation period commences when the person knows of the act which caused his injury and has good reason to believe that the act was improper or done in an improper manner").[3]

Implicitly, Watlow here bases its argument on the discovery rule, contending that Jordahl should have "discovered" his injury in 1974 when he signed the Sales Representation Agreement designating him an independent contractor. Although such an argument is legally plausible, it fails for two reasons. First, on the facts here there is at least a jury question as to when

---

[3] Sixth Circuit cases have stated this discovery rule with slight variations in different contexts. *Ruff v. Runyon*, 258 F.3d 498, 500 (C.A. 6, 2001) (Plaintiff's *Bivens* claims accrued when "plaintiffs knew or should have known of the injury which forms the basis of their claims"); *Fonseca v. Consolidated Rail Corp.*, 246 F.3d 585, 590 (C.A. 6, 2001) (FELA "cause of action accrued under the discovery rule when [plaintiff] first knew, or in the exercise of reasonable diligence should have known, of both the injury and its cause"); *Grand Rapids Plastics, Inc. v. Lakian*, 188 F.3d 401, 405 (C.A. 6, 1999) (plaintiff's antitrust claim accrued "when a defendant commits an act that injures a plaintiff's business").

Jordahl's claim arose under the discovery rule. Not every employer provides pensions to its employees, and not every employee is entitled to a pension. Rather, the right to a pension is a function of pension plan documents adopted by the employer. Here, there is no evidence that Jordahl ever received a copy of the pension plan, or even a summary plan description. Clearly, without a copy of the pension plan, or at least a description of its provisions, Jordahl would be unaware of whatever rights he had under the pension plan. Thus under the discovery rule, he could not have known, nor should he have known, of the injury done him by Watlow by its classification of him as an independent contractor when he was really an employee. *Thomas v. Smithkline Beecham Corp.*, 297 F.Supp.2d 773, 786 (E.D. Pa., 2003) ("It seems clear, then, that prior to receiving copies of the relevant plans, defendants' classification could not be a 'clear repudiation' [of plaintiffs' right to benefits] because plaintiffs were not aware of any claim or potential claim to benefits being repudiated"). Accord: *Godshall v. Franklin Mint Co., supra,* 285 F. Supp.2d at 635.

Moreover, Watlow cites to no evidence showing that prior to 2001 Jordahl knew, or should have known, that he was entitled to pension benefits despite his classification as an independent contractor. The Sixth Circuit has indicated that a plaintiff's obligation to discover his claims must be based on what the typical layman would understand. *Michigan United Food and Commercial Worker Unions v. Mercantile Employees Join Health and Welfare Fund, supra*, 992 F.2d at 600. Would a typical layman understand that an independent contractor is not going to receive a pension even though he is getting health insurance? Would a

typical layman understand his right to a pension even though he has not had access to even a summary plan description? Clearly, the answer is no to both questions.

Jordahl's lack of understanding as to his claims against Watlow is reinforced by Jordahl's discussion with his accountant in 1975 in preparation for filing his 1974 income tax returns. Jordahl testified at his deposition that he was unsure how to prepare his income tax returns for 1974, and consulted with an accountant. The accountant discussed the concept of independent contractor with Jordahl, and advised him that he had to pay the employer's portion of social security taxes, file quarterly returns, and appears to have discussed in some respect the issue of a pension. (Jordahl Depo. Tr. pp. 88 – 91). Yet despite this discussion, not even the accountant suggested to Jordahl that he consult with an attorney about bringing any kind of claims against Watlow. (Jordahl Depo. Tr. p. 91). Clearly, if review of Jordahl's situation by an accountant did not suggest to the accountant that Jordahl may have had legal claims against Watlow, Jordahl as a layman cannot be reasonably held to a greater level of insight into the discovery of his claim.

Additional ambiguities arise here from the fact that the 1974 Sales Representation Agreement, and every subsequent agreement up until 1990, was totally silent as to Jordahl's entitlement to pension benefits. Clearly, Jordahl's classification as an independent contractor, by itself, does not indicate anything about pension rights or eligibility, particularly to a layman. In addition, throughout the same time period, Watlow was providing Jordahl with health insurance

(Admission No. 6 to Defendant's Responses). Health insurance is a benefit companies traditionally provide for their employees. Health insurance is akin to pension benefits in that respect. Jordahl's receipt of health insurance benefits makes it far less clear that Jordahl should have somehow been aware that he had claims against Watlow over his classification as an independent contractor.[4]

If the discovery rule were to be applied here,[5] the most logical time for it to be applied is when Jordahl received the November 20, 2001, statement from Watlow telling him the number of years of vested service he was being credited for pension purposes. This was when Watlow unequivocally informed Jordahl that he was not going to receive credit for the time he served as a sales representative. *Jackson v. Unum Life Insurance Co.*, 2003 WL 1142549 (W.D. Mich.), (attached hereto as Exhibit E) (claim arises when the fiduciary repudiates a claim and makes the repudiation "known to the beneficiary"). See, *Armbruster v. K-H Corp.*, 206 F. Supp.2d 870, 889 (E.D. Mich., 2002) (plaintiff's claim for an alleged breach of a promise for lifetime retiree health insurance benefits accrued when the plaintiffs "were first required to pay for a portion of the cost of their

---

[4] The cases on which Watlow relies are distinguishable on two bases. In none of those cases is there any indication that the plaintiff was receiving health insurance benefits, i.e., an employee-type benefit, while being classified as an independent contractor. Second, in those cases the agreements signed by the plaintiffs specified not only that the plaintiff was an independent contractor, but also that he was not an employee. Prior to 1990, there was no such specification in Jordahl's agreements with Watlow.
   These two differences are significant because they show that the nature and scope of the relationship between Jordahl and Watlow was, from a layman's perspective, confused at best.

[5] The discovery rule normally delays the running of the statute of limitations, making sure that a plaintiff who is unaware of his claims is not unfairly time-barred from asserting those claims when they are discovered at a later date. *Ferrill v. City of Milwaukee*, 295 F.Supp.2d 920, 923 (E.D. Wisc. 2003). Here, Watlow wants the discovery rule turned upside down to hasten the running of the statute.

retiree medical benefits"). At the very least, there is an issue of fact here that cannot be resolved on summary judgment, but must be presented to a jury.[6]

Watlow cannot avail itself of the discovery rule here for a second reason: Jordahl's claim against Watlow was based upon Watlow's longstanding and demonstrable policy to misclassify its sales representatives as independent contractors, and thus constituted a continuing violation under Sixth Circuit case law. In *Dixon v. Anderson*, 928 F.2d 212 (C.A. 6, 1991), the Sixth Circuit described two categories of continuing violations which toll the statute of limitations. The second of these – where the acts complained of are part of a longstanding and demonstrable policy of the defendant -- is applicable here. 928 F.2d at 217. See also, *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101 (2002).

Here, Watlow called Jordahl (and its other field sales personnel) "independent contractors" from at least 1974 until 1997, despite substantial indicia that they were actually employees. This clearly satisfies the second

---

[6] Watlow relies on Jordahl's deposition testimony at pages 88 – 91 for the conclusion that Jordahl knew in 1975 that he was not going to receive a pension. This testimony is fuzzy on this point at best. Jordahl also testified that his boss, Louis Desloge, told him in 1974 the he [Jordahl] "would not be able to tell the difference between being in the field or being inside in [the] training position'" suggesting that Jordahl was going to receive whatever benefits the home office employees were getting. Jordahl Depo. Tr. p. 58.
    Even if Jordahl did understand in 1975 that Watlow was not planning to provide him with a pension, that does not mean that he understood that such was wrongful under Watlow's pension plan. Watlow also references Jordahl's KEOGH plan as evidence of Jordahl's state of mind. Again, the most the KEOGH indicates is that, if Jordahl were aware of the all the complex legal requirements of funding a KEOGH, he was also aware that Watlow was not planning for him to receive pension benefits. Again, such does not indicate that Jordahl was aware that this was wrongful.
    Finally, Watlow notes that Jordahl successfully accumulated a substantial amount of money in his KEOGH. This is obviously irrelevant: Jordahl's KEOGH contributions were made entirely with Jordahl's own money, without any contribution from Watlow. The KEOGH is thus a collateral source that does not mitigate the damage done by Watlow's failure to provide Jordahl with pension credit for his service from 1974 through 1997.

category of continuing violations under *Dixon*, and thus tolled the running of any statute of limitations. Because Jordahl was still classified by Watlow as an independent contractor in 1997, his 2001 lawsuit was not barred by the statute of limitations.

Finally, Watlow's contention regarding the statute of limitations is problematic on its face. By arguing that the statute of limitations began to run in 1974, Watlow contends that Jordahl had to file his claim by 1989 at the latest. This was 12 years before his relationship with Watlow ended, and 18 years before Jordahl is entitled to collect any of the pension benefits he has earned from his service for Watlow. This simply makes no sense. Few people focus extensively on their pension benefits at the beginning of their careers. Most people do not become vested until they are in the plan for five or so years, and in any event, retirement is at best a distant consideration. To start the statute of limitations running at the beginning of a career, as Watlow wants to do here, could leave many employees reaching retirement age time-barred from legitimate claims they may have had earlier in their career. As the Fifth Circuit wrote, an employee's ERISA claim:

> ". . . does not become a presently enforceable demand until a claim is denied. To hold otherwise would put an almost intolerable burden on employees covered by pension plans. It would require individuals who are unversed in the law to be constantly vigilant. . . . Moreover, claims filed before a pension actually has been denied might be challenged for lack of ripeness. (citation omitted.) Requiring piecemeal challenges before an actual denial has occurred would also result in a great waste of judicial resources."

*Paris v. Profit Sharing Plan*, 637 F.2d 357, 361 (C.A. 5, 1981).

### IV. CONCLUSION

In sum, Watlow's contention here should be rejected. It makes far more sense that Jordahl's claim arose when Watlow informed him on November 20, 2001, that his pension benefits would be limited to the five or so years he worked in 1973-1974 and 1997-2001, and that he would not get credit for his service from 1974 through 1997.

    /s/ Edward S. Dorsey_____
Edward S. Dorsey    (#0037630)
William Liss    (#0068252)
LINDHORST & DREIDAME
Attorneys for Defendant
312 Walnut Street, Suite 2300
Cincinnati, Ohio 45202-4091
(513) 421-6630

### CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was served by ordinary U.S. Mail, postage prepaid, upon Harry J. Finke IV, Esq., Graydon, Head & Richey, 1900 Fifth Third Center, 511 Walnut Street, Cincinnati, Ohio 45202-3157; and by facsimile and ordinary U.S. Mail, postage prepaid, to Mary Ann L. Wymore, Esq. and Wendy M. Menghini, Esq., Greensfelder, Hemker & Gale, P.C., 2000 Equitable Building, 10 South Broadway, St. Louis, Missouri 63102, this 27th day of May, 2004.

    /s/ Edward S. Dorsey_____
Edward S. Dorsey, Esq.
Attorney at Law