IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| Marlow Jordahl | : | |
| | : | Case No. C-1-01-862 |
| Plaintiff | : | |
| | : | District Judge Susan J. Dlott |
| v. | : | |
| | : | ORDER GRANTING |
| Watlow Electric Manufacturing Co. | : | DEFENDANT'S MOTION FOR |
| | : | SUMMARY JUDGMENT |
| Defendant | : | |

This matter comes before the Court on Defendant Watlow Electric Manufacturing Co. ("Watlow")'s Motion for Summary Judgment (doc. #20). Plaintiff Marlow Jordahl alleges that Watlow misclassified him as an independent contractor rather than an employee and now owes him pension benefits for the twenty-three years that he worked while classified as an independent contractor. Watlow contends that Jordahl's claim is time-barred. For the reasons set forth below, Watlow's motion is **GRANTED**.

**I.  FACTUAL BACKGROUND**

Watlow hired Plaintiff Marlow Jordahl as an employee in St. Louis in 1973. (Jordahl depo. at 27.) Jordahl received a W-2 for that year of employment. (Id.) In April of 1974, Jordahl moved to Cincinnati, where he assumed the duties of district manager for the greater part of Kentucky and Indiana and southwest Ohio. (Id. at 29-30.) When he began work in the tri-state territory in April of 1974, Jordahl signed a contract with Watlow stating that he was an

independent contractor. (Id. at 47.) Jordahl was classified as an independent contractor for the full twenty-three years that he worked as a sales person in the tri-state territory. (Id. at 44-45. For an example of the contract, see Jordahl depo. exhs. 1 and 2.)

In 1973, while Jordahl was classified as an employee, Watlow made contributions toward his pension benefits. (Id. at 82-83.) After Jordahl signed the contract classifying him as an independent contractor, Social Security was not deducted from his paycheck, and Watlow ceased contributing toward Jordahl's pension benefits. (Id. at 63.) Jordahl did not notice at the time (id.), but he spoke with the then comptroller of Watlow about his employment status, insurance, and Social Security. (Id. at 85.) Jordahl no longer remembers what the comptroller told him, but Jordahl also discussed pension benefits and employment classification with his then accountant in 1975, in preparation for filing his 1974 income tax returns. (Id. at 88-89.) Jordahl's accountant explained to him that because of his independent contractor classification, he had to pay his own Social Security; Jordahl also learned about paying payroll taxes and not receiving pension benefits at that time. (Id. at 90-91.) In 1985, Jordahl began contributing for his retirement to a Keogh Plan, a plan available only to those who are self-employed. (Jordahl depo. exh. 39.) He filed his income tax returns as a sole proprietor at least as late as 1996. (Jordahl depo. exh. 23.)

In 1997, Jordahl returned to an in-house position with Watlow (Jordahl depo. at 118), and he was again designated as an employee and began receiving W-2s. (Id. at 122.) Watlow terminated Jordahl in 2001 and originally informed him that he was ineligible for pension benefits since he had worked as an employee for less than five years. (Doc. #23, exh. C.) A month later, the HR specialist at Watlow informed Jordahl that, taking all of his hours into

account, he had enough hours to satisfy the five year vesting requirement and thus was eligible for pension benefits under the Watlow Group Pension Plan. (Id., exh. D.) Jordahl now brings suit against Watlow under 28 U.S.C. § 1132 of the Employee Retirement Income Security Act of 1974 ("ERISA"), claiming that Watlow misclassified him as an independent contractor for twenty-three years and that he is entitled to pension benefits for those years of service.

## II.     STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c). On a motion for summary judgment, the movant has the burden of showing that there exists no genuine issue of material fact, and the evidence, together with all inferences that permissibly can be drawn therefrom, must be read in the light most favorable to the party opposing the motion. See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). The nonmoving party "must set forth specific facts showing there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The task of the Court is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). A genuine issue for trial exists when there is sufficient "evidence on which the jury could reasonably find for the plaintiff." Id. at 252.

## III.    ANALYSIS

ERISA does not provide a statute of limitations for claims to recover past pension benefits. Such claims are governed by the most analogous state statute of limitations, which is that for breach of contract. Santino v. Provident Life and Accident Ins. Co., 276 F.3d 772, 776 (6th Cir. 2001). The parties dispute whether Ohio's fifteen year or Missouri's ten year statute of

limitations for breach applies.[1]  Notwithstanding which state contract limitations period applies and notwithstanding whether Jordahl was, in fact, misclassified as an independent contractor, Jordahl's claim is time-barred because all possible statutes of limitations have run.

Although the statute of limitations is borrowed from state law, federal law governs when an ERISA claim accrues.  See Michigan United Food and Commercial Workers Unions and Drug and Mercantile Employees Joint Health and Welfare Fund v. Muir Co., Inc., 992 F.2d 594, 598 (6th Cir. 1993).  Generally, an ERISA claim for benefits does not accrue until a claim for benefits has been made and denied.  See e.g. Stevens v. Employer-Teamsters Joint Council No. 84 Pension Fund, 979 F.2d 444, 451 (6th Cir. 1992).  Such a claim may accrue before that, however, when there has been a "repudiation by the fiduciary which is clear and made known to the beneficiary."  Morrison v. Marsh & McLennan Companies Inc., 326 F. Supp. 2d 833, 841 (E.D. Mich. 2004).  Federal courts traditionally apply the discovery rule in such a context.  Mounts v. Grand Trunk Western R.R., 198 F.3d 578, 582 n.3 (6th Cir. 2000); Michigan United Food Workers, 992 F.2d at 597-98.  Under the discovery rule, "a claim accrues and the limitations period begins to run when the plaintiff discovers or with due diligence should have discovered, the injury that is the basis of the action."  Michigan United Food Workers, 992 F.2d at 597 (quoting Connors v. Hallmark & Son Coal Co., 935 F.2d 336, 341 (D.C. Cir. 1991) (internal quotations omitted)).

---

[1] Jordahl's 2001 employment contract with Watlow contains a choice of law provision specifying that Missouri law applies to the contract.  (Jordahl depo. exh. 3 at 3 ¶ 5.)  Ohio's statute of limitations for breach of contract is fifteen years.  Ohio Rev. Code § 2305.06.  Missouri's statute of limitation for breach of contract is ten years.  Mo. Ann. Stat. § 516.110(1).

Jordahl argues that his claim did not accrue until November of 2001,[2] when Watlow informed him that he was credited for only five years of service. Jordahl contends that Watlow's misclassification is a continuing violation that functions to toll the statute of limitations and that starting the clock from Jordahl's understanding of the ramifications of his independent contractor status is unfair because few people focus on their pension benefits at the beginning of their career. There is no Sixth Circuit authority indicating that a longstanding misclassification constitutes a continuing violation of ERISA so as to toll the statute of limitations, and several courts have explicitly held otherwise in other ERISA contexts.[3]

Watlow argues that Jordahl discovered or with due diligence should have discovered his alleged employment misclassification in 1975 when he first discussed the matter with his

---

[2] Jordahl also argues that November 2001 is the appropriate accrual date because an ERISA cause of action accrues when a claim for benefits has been made and denied and Watlow essentially denied Jordahl benefits at that time. Watlow correctly notes that Jordahl has not filed a claim for benefits under Watlow's pension plan nor has he named Watlow's plan as a defendant in this action. Any argument that Watlow's November 2001 letter constitutes a formal denial of benefits must fail because Jordahl has never made a claim.

[3] See Downes v. JP Morgan Chase & Co., No. 03 Civ. 8991, 2004 WL 1277991, *4 n.6 (S.D.N.Y. June 8, 2004) (relevant breach or violation is plaintiff's misclassification, fact that its effects continued to be felt over a period of time does not render wrongful act a continuing violation) Edes v. Verizon Communications, Inc., 288 F. Supp. 2d 55, 61-62 (D. Mass. 2003) (continuing breach does not extend statute of limitations under a continuing violations theory); Schultz v. Texaco Inc., 127 F. Supp. 2d 443, 447 (S.D.N.Y. 2001) (same); Phillips v. Alaska Hotel and Rest. Employees Pension Fund, 944 F.2d 509, 520 (9th Cir. 1991) (finding that if a series of "breaches are of the same kind and nature and the plaintiff had actual knowledge of one of them more than three years before commencing suit, § 1113(a)(2) bars the action"); Pisciotta v. Teledyne Indus., Inc., 91 F.3d 1326, 1332 (9th Cir. 1996) (declining to apply continuing violations theory in ERISA case regarding continuing denial of monthly benefits); In re Fruehauf Trailer Corp., 250 B.R. 168, 203 (D. Del. 2000) (finding that the test for whether subsequent acts fall under the continuing violations theory is "whether each overt act results in a new injury to the plaintiff"); Arakelian v. Nat'l W. Life Ins. Co., 680 F. Supp. 400, 403 (D. D.C. 1987) (continuing violations do not toll statute of limitations).

accountant. The record supports Watlow's argument. Twenty-six years before he filed suit, Jordahl met with his accountant and discussed the ramifications of his employment classification. Jordahl testified that he learned that Watlow was withholding nothing for Social Security or pension benefits. Further, sixteen years before he filed suit, Jordahl invested in a retirement pension plan available only to self-employed persons. While Watlow considered reclassifying their field sales personnel, Jordahl argued strongly to them in an undated memo for the sales personnel to keep their independent contractor status because "[w]e will not be allowed the continuation of our present Keough [sic] plans which allow high dollar amounts to be contributed. The maximum allowable contribution into Watlow's plan will not be sufficient for me to meet my retirement goals." (Jordahl depo. exh. 32.) The evidence clearly shows that Jordahl understood the financial consequences – including providing for his own retirement benefits – of his alleged misclassification well within the limitations period. Because he waited until 2001 to file suit, the limitations period has run and his claim is time-barred. Watlow's motion for summary judgment (doc. #20) must therefore be **GRANTED**.

## IV.    CONCLUSION

For the foregoing reasons, Watlow's Motion for Summary Judgment (doc. #20) is **GRANTED**.

IT IS SO ORDERED.

                                          ___s/Susan J. Dlott_____
                                          Susan J. Dlott
                                          United States District Judge